STATE OF HAWAII, Plaintiff-Appellee, *v.* CARLOS A. HERRERA and ARTHUR CUMMINS, III, Defendants-Appellants

NO. 7405

CRIMINAL NO. 52010

JUNE 12, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

OPINION OF THE COURT BY LUM, J.

On March 19, 1979, appellants Carlos A. Herrera and Arthur Cummins, III, were jointly tried for rape in the first degree (§ 707-730(1)(a)(i), Hawaii Revised Statutes (HRS) ), sodomy in the first degree (§ 707-733(1)(a)(i), HRS) and robbery in the first degree (§ 708-840(1)(b)(ii), HRS) in the circuit court of the first judicial circuit and were convicted of the latter two offenses. From their convictions, this appeal was taken.

We consider only two of the issues raised by this appeal: Whether the trial court erred in denying appellants' motions to dismiss under Rule 48(b) made prior to trial, and whether the trial court erred in denying appellants' motion for judgment of acquittal to the offense of robbery in the first degree because there was insufficient evidence to prove that the gun used was a dangerous instrument.

In both instances we find no error. We therefore affirm their convictions.

I.

Appellant Cummins was arrested August 23, 1978 and appellant Herrera on August 25, 1978 for their crimes. They were indicted a month later on September 27 and arraigned the next month on October 6. After arraignment, their cases were assigned to then Circuit Judge Hayashi for trial during the week of December 11. At the pretrial conference on December 14, 1978, Judge Hayashi set trial for May 21, 22, and 23, 1979.

However, on February 22, 1979, Judge Hayashi assigned and transferred their cases to Judge Honda, then a temporary appointee to fill a vacancy in the circuit bench, who thereafter reset the trial for March 19, 1979.

During the period between appellants' arraignment and their trial date, a number of circumstances occurred which affected the normal prevailing condition of the criminal division. Two of the judges from the normal complement of four had submitted their resignations from the bench. While they were awaiting the effective dates of their resignations, their workload was reduced to allow them to complete their previous assignments. Replacements of the new judges came at different times — Judge Huddy in October 1978, Judge Takao in December 1978 and Judge Honda in February 1979. Because of the workload, the number of criminal judges was increased from four to five in March 1979. Additionally, Judge Huddy, who was reassigned from the family court to the criminal division, took on a limited schedule to permit him to complete his family court cases. The new judges also took on a limited assignment to allow them a period to familiarize themselves with their new assignments. Also, within the period September 1978 to March 1979, the number of indictments had risen from 15 to 21 cases per week to 23 to 25 cases per week.

Appellants filed motions before trial seeking dismissals of the charges against them under Rule 48(b),[1] Hawaii Rules of Penal Procedure, because their trial was not commenced within six months after their arrests.[2]

On March 9, 1979, appellants' motions to dismiss were heard by Judge Honda. He denied their motions, concluding that the delay was due to congestion of the trial docket attributable to exceptional circumstances and therefore excludable in computing the time for trial commencement under Rule 48(c)(2).[3]

---

[1] Rule 48. DISMISSAL.

. . .

(b) *By Court.* Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from:
(1) the date of arrest. . . .

[2] The six-month period was understood to have expired sometime in February 1978.

[3] Rule 48(c): *Excluded Periods.* The following periods shall be excluded in computing the time for trial commencement:

. . .

(2) periods of delay resulting from congestion of the trial docket when the congestion is attributable to exceptional circumstances;

## II.

In this appeal, appellants argue that Judge Honda's findings of fact were unsupported by the evidence; the court erred in concluding that the delay of appellants' trial resulted from congestion of Judge Hayashi's trial docket and that such congestion was attributable to exceptional circumstances.

They point out that the only evidence that was presented by the State in regard to Judge Hayashi's congested trial docket was a statement by the clerk who testified that Judge Hayashi was "taking his fair share."[4] Consequently, there was no basis for the court to conclude that the delay of trial was due to Judge Hayashi's congested trial docket, and it was inappropriate for the court to take judicial notice that the congestion was due to exceptional circumstances prevailing in the first judicial circuit.

In order to resolve both arguments of appellants, it is necessary to examine the rules of evidence dealing with judicial notice of matters within the court's judicial knowledge (as distinguished from common knowledge). Judge Honda's findings in both instances can only be sustained upon a determination that he exercised proper judicial notice over matters of which judicial notice may be taken.

Judicial notice or knowledge may be defined as the cognizance of certain facts which judges and jurors may properly take and act upon without proof because they already know them. *Hettleman v. Frank*, 136 Md. 351, 110 A. 715 (1920). In aid of its judicial knowledge, the court may on its own consult public documents, dictionaries, encyclopedias, geographies, etc., and in so doing is not controlled or restricted by the rules of evidence. *McCandless v. Waiahole Water Co.*, 35 Haw. 314 (1940). The trial court may also take judicial notice of a fact if it is common knowledge or easily verifiable. *State v. Lord*, 63 Haw. 270, 625 P.2d 1038 (1981). It has been held that the court may take judicial notice that an extraordinary situation exists due to congestion of the court's calendars and the long delay in the

---

[4] To keep the record straight, the clerk who testified that Judge Hayashi was "taking his fair share" also testified that Judge Hayashi "had a full calendar between December 1978 and May 1979"; that "Judge Hayashi was carrying a weekly load of seven to nine cases"; and that "all court calendars were congested."

trial of cases resulting therefrom. *Oak Park National Bank v. Peoples Gas Light & Coke Co.*, 46 Ill.App.2d 385, 197 N.E.2d 73 (1964).

We hold that the trial court is likewise empowered to conduct its own investigation in aid of its judicial knowledge; it is free, without the restriction of the rules of evidence, to take judicial notice of (1) the assignment schedule of cases for the judges in the criminal division; (2) the workload and resultant congestion in the division; and (3) the prevailing policy that cases may be reassigned and transferred to other judges to alleviate congestion and avoid trial delays.

As the reviewing court, we may take judicial notice of facts even though the trial court did not do so. *State v. Lord, supra.* We will take judicial notice that it is common knowledge that the criminal dockets of the courts in the first circuit are burgeoning with cases to be heard, and that all of the judges are assigned an inordinate number of cases to be tried.

The trier of fact may draw all reasonable and legitimate inferences and deductions from the evidence adduced, *Fukuoka v. Dou,* 43 Haw. 337 (1959), or from admitted or known facts, or matters of which judicial notice may be taken. *Railroad Yardmasters v. St. Louis, San Francisco & Texas Railway,* 218 F.Supp. 193 (N.D. Tex. 1963). It was proper for Judge Honda to find that the delay resulted from congestion in Judge Hayashi's trial docket, and the congestion is attributable to exceptional circumstances. "Exceptional circumstances," like "good cause," is dependent on the facts of each case. The evidence, based upon all legitimate inferences and deductions, facts admitted or known, and matters which judicial notice may properly be taken, supports his findings. Findings of the trial court will not be disturbed unless clearly erroneous. *Matsumoto v. Kaku,* 52 Haw. 629, 484 P.2d 147 (1971). A finding of fact is clearly erroneous when a reviewing court is driven irrefragably to the conclusion that an objective review of the evidence would result in a different conclusion. *Viveiros v. State,* 54 Haw. 611, 513 P.2d 487 (1973). We conclude that Judge Honda's findings were not clearly erroneous.

### III.

HRS § 708-840 defines robbery in the first degree as follows:

§ 708-840 *Robbery in the first degree.* (1) A person commits the offense of robbery in the first degree if, in the course of

committing theft:

   (a)  He attempts to kill another, or intentionally inflicts or attempts to inflict serious bodily injury upon another; or

   (b)  He is armed with a dangerous instrument and:

      (i)  He uses force against the person of the owner or any person present with intent to overcome the owner's physical resistance or physical power of resistance; or

      (ii)  He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

"Dangerous instrument" is defined as:

   HRS § 708-840(2)   As used in this section, "dangerous instrument" means any *firearm,* or other weapon, device, instrument, material, or substance, whether animate or inanimate, *which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury.* (Emphasis added.)

There was testimony during the trial that the gun used in the robbery was unloaded. Appellants therefore contend that an unloaded gun does not fall within the definition of "dangerous instrument" because the phrase "which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury" modifies the word "firearm." Given such construction, the unloaded gun used in the robbery is not a "dangerous instrument" since it is not a firearm which is capable of producing death or serious bodily injury.

We do not see any reason to place such a strained construction as appellants urge on the language of HRS § 708-840(2). To do so, we would have to ignore that a gun is commonly known as a firearm and regarded by society as a dangerous device by both the reasonable man and the person at whom it is pointed. A rational, sensible and practicable interpretation is preferred to one which is unreasonable or impracticable. *State v. Soto,* 63 Haw. 317, 627 P.2d 279 (1981).

To hold that the use of an unloaded gun by a robber does not support a conviction of robbery in the first degree as defined by our statute would practically render the statute unenforceable. To require the State to prove that a gun used in a robbery is loaded and capable of producing death and injury, would defeat the object and purpose of the statute because it is an unusual case where a robber is

apprehended before he has had an opportunity to carry away from the scene of the crime the weapon used to commit the robbery.

Affirmed.

*Myles T. Yamamoto (Yamamoto & Yee* of counsel) on the briefs for defendants-appellants.

*Patrick W. Border,* Deputy Prosecuting Attorney, on the brief for plaintiff-appellee.