[L.A. No. 31796. Apr. 5, 1984.]

STANLEY STEWART RHINEHART, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE SANTA BARBARA-GOLETA
JUDICIAL DISTRICT OF SANTA BARBARA COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

COUNSEL

Stanley M. Roden, District Attorney, and Gerald McC. Franklin, Deputy District Attorney, for Real Party in Interest and Appellant.

Robert H. Philibosian, District Attorney (Los Angeles), Donald J. Kaplan and Richard Sullivan, Deputy District Attorneys, as Amici Curiae on behalf of Real Party in Interest and Appellant.

Glen Mowrer, Jr., Public Defender, Michael C. McMahon and Thomas Bleauvelt, Assistant Public Defenders, for Plaintiff and Respondent.

Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff and John Hamilton Scott, Deputy Public Defenders, as Amici Curiae on behalf of Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**BIRD, C. J.**—Is an accused "brought to trial" within the meaning of Penal Code section 1382 when the trial court impanels a jury on the last day for

trial permitted by that statute but the case cannot proceed due to court congestion?

## I.

A complaint was filed May 22, 1981,[1] charging Stanley Rhinehart with driving while under the influence of alcohol, a misdemeanor violation of former section 23102, subdivision (a) of the Vehicle Code. Mr. Rhinehart was arraigned on June 22nd. On July 13th, he pleaded not guilty and requested a jury trial. With his consent, the trial was originally set for September 8th and later continued to November 17th.

On that date, both parties announced "ready." The case was put on "trailing" status due to the court's congested calendar. On November 25th, defense counsel was informed by the court's calendar coordinator that a jury would be called and selected on November 27th. However, the trial would be delayed until December 3rd. The reason given for the delay was that the court was engaged in jury selection in another trial, which took precedence over Mr. Rhinehart's trial.

On Friday, November 27th, the last day of the 10-day grace period authorized by Penal Code section 1382,[2] the court informed the parties that the jury would be impaneled on that date, but that the trial would be delayed until December 3rd or 4th. The judge stated that the only reason for impaneling a jury on that date was to avoid a dismissal under section 1382. Defense counsel objected to this procedure, but the court overruled the objection.[3] Thereafter, the selection of the jury commenced.

By 2:30 p.m. that day, 12 jurors and 1 alternate had been selected. The jurors were informed that the court was engaged in another trial. They were

---

[1] All of the relevant procedural events in this case occurred in 1981.

[2] Section 1382 provides in pertinent part: "The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases: . . . [¶] 3. Regardless of when the complaint is filed, when a defendant in a misdemeanor case in an inferior court is not brought to trial within 30 days after he is arraigned if he is in custody at the time of arraignment, or in all other cases, within 45 days after his arraignment, . . . except that an action shall not be dismissed under this subdivision (1) if it is set for trial on a date beyond the prescribed period at the request of the defendant or with his consent, express or implied, and the defendant is brought to trial on the date so set for trial or within 10 days thereafter . . . ."

All statutory references are to the Penal Code unless otherwise indicated.

[3] The docket entry for that date reads in part: "Objection by [defense] counsel as to limiting todays [sic] proceedings to selection of a jury and continuing proceedings to 12-3-81, or 12-4-81. It is noted that above is necessary because of a shortage of a judge at this time. . . ."

Apparently, one of the municipal court judges was on vacation from November 11th through November 27th. He was scheduled to return on Monday, November 30th. The record does not indicate why that judge was not available on November 30th to try Mr. Rhinehart's case.

then told to return on Thursday, December 3rd, but to call in first to check for an exact date and time. The jury was then excused.

On December 1st, defense counsel filed a motion to dismiss pursuant to section 1382. The motion was denied. The court again stated that it was not available to try the case until December 3rd, because another trial was in progress.

On December 2nd, Mr. Rhinehart filed a petition for a writ of prohibition in the superior court seeking review of the municipal court's denial of his section 1382 motion. Following a hearing, the superior court ordered the issuance of a peremptory writ of prohibition. The prosecution appeals from that judgment.

## II.

The right to a speedy trial is a fundamental right. (*Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 88 [106 Cal.Rptr. 786, 507 P.2d 90].) It is guaranteed by the state and federal Constitutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) The Legislature has also provided for " 'a speedy and public' trial as one of the fundamental rights preserved to a defendant in a criminal action. (§ 686, subd. 1.)" (*Sykes, supra,* 9 Cal.3d at p. 88.) To implement an accused's constitutional right to a speedy trial, the Legislature enacted section 1382. (*Owens* v. *Superior Court* (1980) 28 Cal.3d 238, 249 [168 Cal.Rptr. 466, 617 P.2d 1098].)

That section "constitutes a legislative endorsement of dismissal as a proper judicial sanction for violation of the constitutional guarantee of a speedy trial and as a legislative determination that a trial delayed more than [the prescribed period] is prima facie in violation of a defendant's constitutional right." (*Sykes, supra,* 9 Cal.3d at p. 89, fn. omitted.) Thus, an accused is entitled to a dismissal if he is "brought to trial" beyond the time fixed in section 1382. (*Id.,* at pp. 88-89.)

Various time limits—depending upon the nature of the charge, the court in which the action is heard, and the custodial status of the accused at the time of arraignment—within which an accused must be "brought to trial" to avoid a dismissal are set forth in section 1382.[4] Mr. Rhinehart, charged in municipal court with a misdemeanor violation and released on his own recognizance, consented to various trial dates beyond the 45-day period following the date of his arraignment. The last date consented to was November 17th. As section 1382 provides, the 10-day grace period within

---

[4]See footnote 2, *ante.*

which he had to be "brought to trial" commenced running on that date and expired on November 27th. Both parties agree that if Mr. Rhinehart was not "brought to trial" on that date, the municipal court should have granted the motion to dismiss unless good cause for a further delay was established.

■ What, then, is meant by the words "brought to trial" in section 1382?[5] "There is no talismanic phrase which can be used to describe the precise point at which an individual has been 'brought to trial.' The outside limits of the area can easily be established. A defendant has obviously been 'brought to trial' when the judgment or verdict is rendered in the case. On the other hand, a defendant has certainly *not* been brought to trial prior to the day when the trial is scheduled and both parties appear and announce that they are ready to proceed." (*Sanchez* v. *Municipal Court* (1979) 97 Cal.App.3d 806, 810 [159 Cal.Rptr. 91].)

Although this court has never construed the phrase, several lower courts have interpreted its meaning. (See *Sanchez* v. *Municipal Court, supra,* 97 Cal.App.3d 806; *People* v. *Amati* (1976) 63 Cal.App.3d Supp. 10 [134 Cal.Rptr. 61]; *People* v. *Katzman* (1968) 258 Cal.App.2d 777, 787-790 [66 Cal.Rptr. 319].) Mr. Rhinehart relies upon the principles announced in two of those decisions—*Amati* and *Sanchez*—to support his position that he was not "brought to trial" within the meaning of section 1382.

In *Amati,* a panel of prospective jurors was sworn in at 4:30 p.m. on the 45th day after the accused's arraignment—the last day on which he could be "brought to trial" under section 1382.[6] (*Amati, supra,* 63 Cal.App.3d Supp. at p. 11.) A recess was then taken until the next morning. (*Id.,* at p. 12.) In reversing the trial court's order granting the accused's motion to dismiss, the appellate court held that "the swearing of a panel of prospective jurors constitutes bringing a case to trial within the 45-day provisions of Penal Code section 1382, *so long as the panel is sworn in as a good faith*

---

[5]What constitutes "brought to trial" within the meaning of section 1382 is to be distinguished from the meaning given that phrase in the civil context. Code of Civil Procedure section 583, subdivision (b) provides that an action shall be dismissed if it is not brought to trial within five years after it was filed. In *Hartman* v. *Santamarina* (1982) 30 Cal.3d 762 [180 Cal.Rptr. 337, 639 P.2d 979], the trial court impaneled a jury in order to avoid a dismissal under that statute. (*Id.,* at p. 764.) Thereafter, the jurors were discharged and the trial was continued for approximately seven months. (*Ibid.*) In reversing the trial court's dismissal of the action, this court held that the action had been "brought to trial" within the meaning of the statute when the jury was impaneled. (*Id.,* at pp. 766-767.)

Obviously, *Hartman* is distinguishable from this case. Here, a Penal Code statute which implements an accused's constitutional right to a speedy trial is involved. That delicate right was not at issue in *Hartman.*

[6]Unlike Mr. Rhinehart, the individuals in *Amati* and *Sanchez* had not consented to any continuances beyond the 45-day period provided in section 1382. Thus, the 10-day grace period (see fn. 2, *ante*) did not come into play.

*start to the jury selection process and not as a mere device to avoid the impact of the statute.* There is no indication here that any bad faith was involved." (*Ibid.*, italics added.)

In *Sanchez,* a panel of prospective jurors was sworn on the afternoon of the 45th day after arraignment. (*Sanchez, supra,* 97 Cal.App.3d at pp. 808-809.) After 12 jurors were drawn and seated in the jury box, but prior to voir dire, the judge recessed the case until the next court day. The court reconvened on January 3, 1978,[7] and a new juror was drawn to replace one of the twelve prospective jurors who had asked to be excused. Also on that day, the case was transferred to another judge who was ready to proceed with the trial.

In holding that the accused was "brought to trial" within the meaning of the statute, the court in *Sanchez* expanded upon *Amati*'s "good faith" language. Whether the trial court acted in good faith must be "*objectively determined.*" (*Sanchez, supra,* 97 Cal.App.3d at pp. 811-812, italics in orig.) Where "the record objectively shows that a case is assigned for trial to a judge who is available to try the case and the court has committed its resources to the trial, the parties answer ready and a panel of prospective jurors is summoned and sworn, the trial process has commenced and defendant has been 'brought to trial' as that term is used in Penal Code section 1382." (*Id.,* at p. 813.) The court went on to note that it was "not rul[ing] out the possibility that in any given case subsequent events may disclose that the court was not in fact available or ready to process the case to conclusion without unnecessary delay. In such case it could then appear that the trial had not in fact commenced." (*Ibid.*) The court "reiterate[d] that such a determination must be made from the objective record." (*Ibid.*)

On the other hand, it is contended that Mr. Rhinehart *was* "brought to trial" within the meaning of section 1382 because his jury had been selected and sworn within the time limits provided by the statute. In support of this position, the state relies on *People* v. *Katzman, supra,* 258 Cal.App.2d 777. In *Katzman,* the jury was selected within the 10-day grace period prescribed by section 1382. The trial judge then continued the case for 13 days so that he could attend a judge's conference. (*Id.,* at p. 787.) The Court of Appeal upheld this procedure, reasoning that "[i]t would seem that the impaneling of the jury . . . should constitute a bringing to trial." (*Id.,* at pp. 788-789.) ██ ██ ██ The court went on to note that the impaneling of the jury is a significant event in determining when an accused has been placed in jeop-

---

[7]The panel had been sworn on the afternoon of Friday, December 30, 1977. Because of the New Year's weekend, the next court day was Tuesday, January 3, 1978. (*Sanchez, supra,* 97 Cal.App.3d at pp. 808-809.)

ardy.[8] (*Ibid.*) Thus, it would be "inconsistent to state that a defendant is in jeopardy when the jury has been impaneled, yet has not been brought to trial for purposes of the speedy trial requirement of section 1382." (*Id.*, at p. 789.)

■ The *Sanchez* court's approach as to whether an accused has been "brought to trial" gives substance to the rights embodied in section 1382. That court's approach ensures compliance with both the letter and the spirit of the statute. By not mechanically focusing only on a precise point in the proceedings but looking also to the trial court's availability and readiness to try a case, the *Sanchez* approach discourages trial courts from merely paying lip service to the legislative mandate embodied in section 1382.

Moreover, there are sound reasons why this court should reject the *Katzman* court's reasoning and conclusion. First among these is the obvious circumvention of section 1382 which *Katzman* invites. If a trial court could impanel a jury and delay a trial days or even weeks, then the statutory guarantee of a speedy trial would be rendered a nullity, and an accused's rights under section 1382 would be eviscerated. This court should not encourage imaginative ways to avoid the clear intent of the Legislature as enunciated in the Penal Code.

Furthermore, the attachment of jeopardy should not be determinative of when an accused has been "brought to trial." An Eleventh Circuit case best illustrates this principle. In *United States* v. *Gonzalez* (11th Cir. 1982) 671 F.2d 441, the court held that a trial commences—for the purposes of the federal Speedy Trial Act[9]—when voir dire begins. (*Id.*, at p. 443.) The court specifically "reject[ed] [appellant's] contention that a trial commences under the [federal Speedy Trial] Act when the jury is sworn because that is when jeopardy attaches." (*Id.*, at p. 444, fn. 4.) The court noted that "[t]he cases dealing with the attachment of jeopardy are based upon constitutional considerations wholly different from the premises of the Act, namely 'concerns [with] finality of judgments, the minimization of harassing exposure to the harrowing experience of a criminal trial, and the valued right to continue with the chosen jury. . . .' [Citation.] Appellant has cited no rea-

---

[8]"A person is in legal jeopardy for an offense when placed on trial on a valid accusatory pleading before a competent court with a jury duly impaneled and sworn; or, if the trial is by the court, when the trial is 'entered upon.' [Citations.] A court trial is 'entered upon' when the first witness is sworn. [Citations.]" (*People* v. *Upshaw* (1974) 13 Cal.3d 29, 32-33 [117 Cal.Rptr. 668, 525 P.2d 756].)

[9]The federal Speedy Trial Act provides in pertinent part: "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment . . . ." (18 U.S.C.A. § 3161 (c)(1).)

son, and we perceive none, why these considerations compel us to adopt the same rule for commencement of trial under the Act." (*Ibid.*)

The court in *Gonzalez* also voiced a view similar to that expressed in *Sanchez, supra,* 97 Cal.App.3d 806. Although holding that a trial commences—for the purposes of the federal Speedy Trial Act[10]—when the court begins voir dire (671 F.2d at p. 443), the opinion cautioned that the decision should "not be viewed as a license to evade the Act's spirit by commencing voir dire within the prescribed time limits and then taking a prolonged recess before the jury is sworn and testimony is begun. The district courts must adhere to both the letter and the spirit of the Act, and we will not hesitate to find that a trial has not actually 'commenced' within the requisite time if we perceive an intent to merely pay the Act lip service." (*Id.,* at p. 444.)

These principles compel the holding that an accused is "brought to trial" within the meaning of section 1382 when a case has been called for trial by a judge who is normally available and ready to try the case to conclusion.[11] The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn.[12]

Under this test, it cannot be said that Mr. Rhinehart was "brought to trial" within the meaning of section 1382. The trial judge indicated that the jury was impaneled solely to avoid a dismissal under section 1382. Moreover, the court was not available or ready to try the case to conclusion. The trial judge interrupted the trial in another case to conduct jury selection on November 27th. The next court day was November 30th, but the case was not reconvened at that time. It was continued to December 3rd or 4th or possibly later. Thus, Mr. Rhinehart was not "brought to trial" within the meaning of section 1382.

## III.

 Under section 1382, if an accused is not "brought to trial" within the prescribed time period—in this case, the 10-day grace period—the court

---

[10]See footnote 9, *ante.*

[11]To the extent that *People* v. *Katzman, supra,* 258 Cal.App.2d 777 is inconsistent with the principles announced today, it is disapproved.

[12]Even if voir dire is not commenced, a panel of prospective jurors must be summoned and sworn in order for an accused to be "brought to trial." That stage of the proceedings is evidence that, barring a negotiated plea or a dismissal under section 1385, a trial will occur. However, swearing the panel, by itself, is not sufficient. The trial court must also comply with the other requirements.

must order the action dismissed "unless good cause to the contrary is shown."[13] The burden of showing good cause is on the prosecution. (*Owens v. Superior Court, supra,* 28 Cal.3d 238, 250.) Whether or not good cause exists depends upon the circumstances of the case. (*Ibid.*)

■ Here, it is clear that the trial court was not prepared to commence trial for at least three or four court days after jury selection. The judge assigned to hear the case was involved in another trial which took precedence. No other judge was assigned to the case. This court must determine whether the trial court's congested calendar constituted good cause for avoiding the time limits of section 1382.[14]

In this regard, the discussion in *People v. Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255] is instructive.[15] In *Johnson,* this court recognized that "the purpose of the state constitutional protection of the right to a speedy trial is 'to protect those accused of crime against possible delay, caused either by willful oppression, or the neglect of the state or its officers.' '[T]he state or its officers,' we must observe, includes not only the prosecution, but the judiciary . . . . '[O]ppression' or 'neglect' may include the failure to provide the facilities and personnel needed to implement the right to speedy trial." (*Johnson, supra,* 26 Cal.3d at p. 571.)

The court observed that the accused may be denied his or her right to a speedy trial "*simply by the failure of the state to provide enough courtrooms or judges to enable* [the accused] *to come to trial within the statutory period.*" (*Ibid.*) " '[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn.' [Citation.]" (*Ibid.*)

The court in *Johnson* also specifically questioned "those decisions which assume that court congestion . . . necessarily constitute[s] good cause to

---

[13]The state has not addressed this issue in this context, since under its view of the proceedings Mr. Rhinehart *was* "brought to trial" within the meaning of section 1382. In its view, good cause under section 1382 did not need to be shown. Rather, to justify the three- or four-day continuance following jury selection, an argument under section 1050 is advanced. That statute permits a trial court to "continue . . . the trial . . . only upon a showing of good cause. . . ." In view of the conclusion that Mr. Rhinehart was not "brought to trial," this court need not determine whether good cause under section 1050 was shown.

[14]Amicus California District Attorneys Association recognizes that "court congestion does not constitute good cause to satisfy the requirements of section 1382."

[15]*Johnson* involved whether appointed counsel's congested calendar constituted good cause under section 1382. (*Johnson, supra,* 26 Cal.3d at p. 569.) However, this court did not limit its analysis to only that type of congestion, but also discussed whether court congestion could excuse compliance with the time limits of the statute.

deny dismissal."[16] (*Johnson, supra,* 26 Cal.3d at pp. 570-571.) Thus, "calendar conflict on the part of . . . the trial court cannot routinely serve to justify denial of a motion to dismiss when trial is postponed beyond the statutory period." (*Id.,* at p. 575.) Court congestion will constitute good cause only when the congestion is "attributable to exceptional circumstances." (See *id.,* at pp. 571-572.)[17]

Although the court in *Johnson* expressly limited its discussion of the "good cause" provision of section 1382 to cases involving individuals who are incarcerated while awaiting trial (*Johnson, supra,* 26 Cal.3d at p. 569), there is no sound reason why its reasoning should not apply to individuals who are not in custody. The constitutional and statutory guarantees to a speedy trial are not limited to incarcerated individuals.

Court of Appeal decisions have adhered to the principles expressed in *Johnson* and have held that absent exceptional circumstances, a trial court's congested calendar does not constitute good cause to avoid a dismissal under section 1382. In *Arreola* v. *Municipal Court* (1983) 139 Cal.App.3d 108 [188 Cal.Rptr. 529], 38 defendants were charged with misdemeanors and were not "brought to trial" within the time limits specified in section 1382. (*Id.,* at pp. 111-112.) The Court of Appeal ordered the municipal court to dismiss their cases, holding that "chronic" court congestion does not constitute good cause. (*Id.,* at pp. 113-114.) Although the court noted that delay occasioned by "exceptional circumstances" would be sufficient, it rejected the argument that an "unprecedented" demand for trial constitutes such a circumstance. (*Id.,* at pp. 114-115.) "The state must stand ready to provide a jury trial to every defendant. The state may not demand as a price in

---

[16]See, e.g., *In re Lopez* (1952) 39 Cal.2d 118, 120 [245 P.2d 1]; *People* v. *Weiss* (1958) 50 Cal.2d 535, 559 [327 P.2d 527]; *People* v. *Yniquez* (1974) 42 Cal.App.3d Supp. 13, 19 [116 Cal.Rptr. 626].

[17]"The American Bar Association's Standards for Speedy Trial (ABA Project on [Minimum] Standards for Crim. Justice, Stds. Relating to Speedy Trial (Approved Draft 1968)) [hereafter, ABA Standards] discusses the problem of delay caused by court congestion. It states that 'delay arising out of the chronic congestion of the trial docket should not be excused. . . . [¶] But, while delay because of a failure to provide sufficient resources to dispose of the usual number of cases within the speedy trial time limits is not excused, the standard does recognize congestion as justifying added delay when "attributable to exceptional circumstances." Although it is fair to expect the state to provide the machinery needed to dispose of the usual business of the courts promptly, it does not appear feasible to impose the same requirements when certain unique, nonrecurring events have produced an inordinate number of cases for court disposition.' (Pp. 27-28.)" (*Johnson, supra,* 26 Cal.3d at p. 571.)

The ABA Standards—implicitly approved in *Johnson*—distinguish chronic court congestion from congestion caused by exceptional circumstances. (*Johnson, supra,* 26 Cal.3d at p. 572.) An example of the latter is the occurrence of a large-scale riot or other mass public disorder resulting in an inordinate number of cases which are simultaneously scheduled for trial. (ABA Standards, *supra,* at p. 28.)

exchange therefor that a defendant give up the right to a speedy disposition of the cause. . . . [¶] [I]f the state chooses to provide only sufficient resources to handle the expected number of trials, it must be prepared to accept consequences should its prediction prove wrong. [Citation.] The cost of its error cannot be passed on to defendants." (*Id.*, at p. 115; see also *Perez* v. *Superior Court* (1980) 111 Cal.App.3d 994, 999-1001 [169 Cal.Rptr. 45].)

*Lewis* v. *Superior Court* (1981) 122 Cal.App.3d 494 [176 Cal.Rptr. 80] follows the *Johnson* reasoning. There, on the last day for trial under section 1382, two cases were placed on "standby" status because there were no available judges to hear them. The record indicated that between five and seven judges from the court were attending a conference on judicial training. (*Id.*, at pp. 496, 498-499.) In holding that the trial court erred in failing to dismiss the actions under section 1382, the Court of Appeal observed that their attendance at the conference was not an "exceptional circumstance" which would justify a finding of good cause for the delay. (*Ibid.*) The court reasoned that while continuing education for judges is necessary and desirable, it should not take precedence over an accused's right to a speedy trial. (*Ibid.*)

Here, Mr. Rhinehart's case was to be delayed for almost a week after his jury was impaneled because the judge was engaged in another trial which took precedence over his trial. That congestion did not constitute good cause under section 1382 unless "exceptional circumstances" were present. The fact that there was a shortage of judges on November 27th because one judge was on vacation did not constitute such a circumstance.

Furthermore, the vacationing judge was scheduled to return on Monday, November 30th. Even assuming arguendo that the vacationing judge's absence constituted an exceptional circumstance for delaying the trial over the weekend, that circumstance evaporated on the date of his return. Yet the record is silent as to why the vacationing judge did not proceed with the trial on Monday. Since the state has failed to meet its burden of justifying any delay beyond November 30th, good cause has not been established under the statute.

This court is sympathetic to the problems resulting from the congestion of municipal court dockets. However, where such congestion is not of an "exceptional" nature, it cannot deprive an accused of his right to a speedy trial.

## IV.

Section 1382 was enacted to implement an accused's constitutional and statutory right to a speedy trial. It prescribes certain time periods within

which an accused must be "brought to trial." That section would be rendered a nullity if, under the guise of bringing an accused to trial, a court were permitted to impanel a jury and subsequently delay the case without good cause. Surely the Legislature could not have intended the statute to be applied in this manner.

Mr. Rhinehart was not "brought to trial" within the specific time limits set forth by section 1382. Moreover, the prosecution did not demonstrate good cause for bringing him to trial beyond the 10-day grace period permitted by the statute.

Accordingly, the superior court's judgment (order issuing a writ of prohibition) is affirmed.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., Grodin, J., and Miller, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.