**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **IDA ALOHALANI KAHAWAI**, Defendant–Appellant

NO. 15446

(CR. NO. 90–0301)

JUNE 5, 1992

BURNS, C.J., HEEN, J., AND CIRCUIT
JUDGE CRANDALL, ASSIGNED BY
REASON OF VACANCY*

---

*Circuit Judge Crandall was assigned to sit in the case prior to Watanabe, J., becoming a member of the Intermediate Court of Appeals.

## OPINION OF THE COURT BY HEEN, J.

The dispositive issue in this appeal is whether the lower court erred in denying Defendant–Appellant Ida Alohalani Kahawai's (Defendant) motion to dismiss for violation of her speedy trial rights under Rule 48(b), Hawai'i Rules of Penal Procedure (HRPP) (1977).[1] The specific question is whether the trial court correctly

---

[1] The pertinent provision of Rule 48(b), Hawai'i Rules of Penal Procedure (HRPP) (1977), reads as follows:

(b) **By Court.** Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from:

(1) the date of arrest or of filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

concluded that court congestion due to exceptional circumstances supported the exclusion of a sufficient number of days from the total elapsed time from Defendant's arrest to her trial so that Defendant was, as a matter of law, brought to trial within the six–month period required by Rule 48, HRPP.[2]  We conclude that the court erred.[3]

Defendant was arrested on a charge of murder on February 16, 1990, and has been in custody since then. Following an indictment for murder in the second degree, her jury trial began on April 29, 1991, and a jury verdict of guilty of a lesser included offense of manslaughter was returned on May 13, 1991. Judgment was entered on June 24, 1991, and Defendant timely appealed.

On October 31, 1990, the Honorable Wendell K. Huddy, the administrative judge of the criminal calendar for the first circuit court, assigned the instant case for trial to the ninth division of that court. The case was one of twenty–four murder cases assigned to the eighth and ninth divisions for trial. Hereafter, Judge Huddy's order will be referred to as the Assignment Order.

On December 10, 1990, Defendant filed her first Rule 48 motion to dismiss. At that time, the case was set for March 25, 1991. On December 31, 1990, after a hearing, the court entered findings of fact (FOF) and conclusions of law and an order denying the motion. In its FOF, the court excluded 145 days under Rule 48(c)(2) "due to congestion of the trial docket attributable to the exceptional circumstances noted in [the Assignment Order]."

---

[2] Rule 48(c)(2), HRPP, provides as follows:

(c) **Excluded Periods.** The following periods shall be excluded in computing the time for trial commencement:

\* \* \*

(2)  periods of delay resulting from congestion of the trial docket when the congestion is attributable to exceptional circumstances[.]

[3] The court's conclusion of law is freely reviewable. *State v. Ferraro*, 8 Haw. App. 284, 800 P.2d 623 (1990).

On April 3, 1991, Defendant filed her second Rule 48 motion. In a memorandum attached to the motion, defense counsel noted that the court had informed him that trial was set for April 29, 1991. After a hearing, the court denied the second motion, again entering findings of fact, conclusions of law, and an order of denial on April 12, 1991. This time the court excluded 180 days under Rule 48(c)(2), again citing the "exceptional circumstances" outlined in the Assignment Order.

In both the December 31, 1990 and April 12, 1991 orders, the court excluded 80 days from the elapsed time pursuant to Rule 48(c)(1), HRPP, for collateral proceedings related to Defendant. If the lower court was correct in its exclusions for court congestion, the 177 days not excluded met the six–month limitation of Rule 48(b), HRPP.

The pertinent provisions of the Assignment Order are as follows:

> The Court takes judicial notice of its administrative calendar. To date there are approximately 393 cases awaiting trial setting, inclusive of 33 Murder and Attempted Murder cases and approximately 20 Sexual Assault cases. There is extreme calendar congestion. Contributing factors to this overload are:
>
> 1) Length of trials;
>
> 2) Witness conflicts;
>
> 3) Attorney conflicts;
>
> 4) Substantial increase in the number of criminal filings in the calendar years 1988, 1989, and 1990. The 1990 criminal filings probably will exceed those of 1988 and 1989. For example, in 1989 there were approximately 2,012 criminal filings. To date, criminal filings are close to 2,000;

5) Substantial increase in the number of Murder, Attempted Murder, and Sexual Assault filings;

6) Congestion in the Motions Court.

The Assignment Order clearly describes the congestion of the criminal calendar in the first circuit and the reasons for the case backlog. The question is whether the ascribed reasons are "exceptional circumstances" within the meaning of Rule 48(c)(2).

In *State v. Lord*, 63 Haw. 270, 625 P.2d 1038 (1981), the supreme court stated:

Rule 48(c)(2) was derived from the ABA Standards Relating to Speedy Trials. *See* Commentary to HRPP, Rule 48.

The commentary appearing in the ABA Standards states:

But, while delay because of a failure to provide sufficient resources to dispose of the usual number of cases within the speedy trial time limits is not excused, the standard does recognize congestion as justifying added delay when "attributable to exceptional circumstances." Although it is fair to expect the state to provide the machinery needed to dispose of the usual business of the court promptly, *it does not appear feasible to impose the same requirements when certain unique, nonrecurring events have produced an inordinate number of cases for court disposition.* [Emphasis added.]

*Id.* at 272, 625 P.2d at 1039. The supreme court upheld the court congestion exclusion on the ground that during the period in question the grand jury had returned an inordinately large number of indictments.

Similarly, in *State v. Herrera*, 63 Haw. 405, 629 P.2d 626 (1981), the supreme court upheld the exclusion on the grounds that

during the relevant period there was a shortage of judges to hear criminal cases in the first circuit due to the resignations of two judges; the need for the two replacement judges to familiarize themselves with their new assignments; the need for a judge newly assigned to the criminal calendar from the family court to carry a lighter work load in order to complete his family court cases; and an increase in the number of indictments.

*Lord* and *Herrera* are clear examples of exceptional circumstances.

Other jurisdictions have applied the same analytical format in deciding court congestion cases. *See, for example*, *State v. Bond*, 340 N.W.2d 276 (Iowa 1983); *State v. Frazier*, 298 Md. 422, 455, 470 A.2d 1269, 1286 (1984) (although chronic court congestion is ordinarily not regarded as good cause for trial delay, nonchronic congestion does not preclude the court from finding good cause for the postponement of trial); *Rhinehart v. Municipal Court for Santa Barbara–Goleta Judicial Dist. of Santa Barbara County*, 35 Cal. 3d 772, 200 Cal. Rptr. 916, 677 P.2d 1206 (1984) (chronic court congestion does not constitute good cause for postponement of trial beyond the statutory period); *State v. Cooper*, 421 N.W.2d 67 (S.D. 1988).

The distinction between chronic court congestion and congestion due to exceptional circumstances enhances Rule 48's purpose of furthering society's interest in the prompt disposition of criminal trials. *State v. English*, 68 Haw. 46, 705 P.2d 12 (1985) (purpose of speedy trial statute is in furtherance of policy considerations to relieve court congestion, to promptly process all cases reaching the courts, and to advance the efficiency of the criminal justice process). *Accord State v. Frazier*.

The prosecutor, the court, and the accused share responsibility for carrying out the speedy trial requirements of Rule 48. *State v. Faalafua*, 67 Haw. 335, 686 P.2d 826 (1984). Rule 48(b)'s sanction of dismissal in criminal cases not tried within the prescribed

time frame, unless excludable delay is shown, creates an incentive for trial courts to design and implement efficient and fair procedures to decrease the potential for delay caused by chronic congestion and for the legislature to supply the necessary resources to ensure prompt processing of all criminal cases.[4] Additionally, Rule 48's speedy trial requirement also gives the prosecutor an incentive to design screening procedures to ensure that as much as possible those cases that may be disposed of by other means than trial are removed from the criminal justice system as quickly as possible.[5]

---

[4] By 1960, court systems throughout the nation had become burdened by "chronic court congestion," as evidenced by overcrowded dockets, backlogs, and shortages of courts, prosecutors, and defense attorneys. *State v. Frazier,* 298 Md. 422, 470 A.2d 1269 (1984). In its Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, the American Bar Association stated:

> *"Congestion in the trial courts of this country, particularly in urban centers, is currently one of the major problems of judicial administration.* Notwithstanding the usual rule that criminal cases have priority over civil cases, this congestion has created serious difficulties for the administration of criminal justice. *The continued pressures upon existing resources have been such that it is extremely difficult to dispose of all criminal cases with promptness and with due regard for fair procedures.*
>
> Several approaches to this problem are possible and desirable. The most obvious, but perhaps the most difficult, is that of finding means for reducing the amount of criminal conduct, such as by attacking poverty and other crime stimuli. Another is to overcome society's reluctance to provide the necessary resources — more prosecutors, judges, courtrooms, and court personnel — for prompt processing of all cases reaching the courts. *Still other approaches involve the structuring of improvements in criminal procedure, particularly by advancing the efficiency of the process while at the same time ensuring its fairness and effectiveness."* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial at 1 (Approved Draft 1968) (emphasis added).

*State v. Frazier,* 298 Md. at 469, 470 A.2d at 1293 (Davidson, J., dissenting).

[5] We note that the defense bar is critical of the prosecuting attorney's office for "overcharging" and refusing to accept a plea to a lesser charge. Such an inflexible policy is not conducive to the relief of court congestion.

We commend the lower court for attempting through the Assignment Order to resolve the problem of disposing of the large number of murder cases pending in October 1990, while at the same time removing those cases as an obstacle to the expeditious treatment of other cases pending in the first circuit. The Assignment Order is an example of an innovation encouraged by Rule 48.

However, there is nothing to indicate that the matters cited in the Assignment Order as contributing to the backlog are unique, nonrecurring events.[6] On the contrary, the contributing factors cited there are routinely encountered in the scheduling and trial of criminal cases. In short, the Assignment Order does not provide a factual basis for the conclusion that the congestion in the criminal calendar of the first circuit is due to exceptional circumstances. Consequently, the delay occasioned thereby is not excludable under Rule 48(c)(2).

We recognize that our decision in this case will have repercussions in other criminal cases pending in the first circuit and, perhaps, the other circuits. However, to continue to hold that criminal calendar congestion in the first circuit is due to exceptional circumstances would result in the exception swallowing the rule and render the Rule 48 requirement meaningless.

We vacate the judgment in this case and remand for dismissal, with or without prejudice, in the lower court's discretion.

*Joyce K. Matsumori–Hoshijo*, Deputy Public Defender, for defendant–appellant.

*James M. Anderson*, Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff–appellee.

---

[6] "An 80 percent increase in criminal case filings over the past five years has led to a chronic backlog problem in the First Circuit Court." *The Judiciary State of Hawai'i, Annual Report* 1991.

## DISSENTING OPINION OF CRANDALL,
## CIRCUIT JUDGE

I respectfully dissent.

I do not concur with the majority opinion that the Assignment Order does not provide a factual basis to establish exceptional circumstances. " 'Exceptional circumstances,' like 'good cause,' is dependent on the facts of each case[,]" *State v. Herrera*, 63 Haw. 405, 629 P.2d 626 (1981), and, the findings of the trial court are not to be disturbed unless clearly erroneous. *Id.* In addition to the factors set forth in the Assignment Order as contributing to the backlog, the trial court also found, among other facts, that the number of cases awaiting trial had risen from 393 on October 31, 1990 to 624 cases awaiting trial or other disposition, on March 25, 1991.

A substantial increase in the number of murder, attempted murder and sexual assault filings, the scheduling of the trial in accordance with the priorities set forth in the Assignment Order and a more than 50% increase in the number of cases awaiting trial or other disposition in a five month period can reasonably be considered to be unique and nonrecurring events to support a finding of exceptional circumstances. As the court recognized in *State v. Herrera, supra*, the reviewing court must be "driven irrefragably to the conclusion that an objective review of the evidence would result in a different conclusion" in order to hold a finding of fact to be clearly erroneous. I am not so driven here and conclude that the findings of fact, therefore, are not clearly erroneous and the conclusion of the trial court that there was not a violation of HRPP Rule 48 should not be reversed. *State v. Herrera, supra; State v. Lord*, 63 Haw. 270, 625 P.2d 1038 (1981).

I would affirm the trial court's denial of the motions to dismiss.