[No. G034699. Fourth Dist., Div. Three. Jan. 25, 2006.]

In re CHUONG D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHUONG D., Defendant and Appellant.

**COUNSEL**

William D. Holman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BEDSWORTH, J.**—This case presents an unfortunate—but blessedly rare—instance in which both the court and the prosecutor erred, but defendant is entitled to no relief. We publish it because it seems to be that rare cautionary tale with different lessons for all the parties.

Chuong D. appeals from the trial court's order declaring him a ward of the court pursuant to Welfare and Institutions Code section 602. The order was based upon the determination he was culpable for three counts of assault by means of force likely to produce great bodily injury and with a deadly weapon, in violation of Penal Code section 245, subdivision (a)(1). Chuong argues the order must be reversed because the prosecutor misrepresented his readiness for the jurisdictional hearing, and informed the court only after the hearing was underway that his key witness, the only one who could tie Chuong to the assault, was unavailable to testify for at least another week. Chuong argues that this conduct effectively denied him his right to a speedy trial. Additionally, Chuong suggests the court abused its discretion when it subsequently granted the prosecutor's request for an eight-day recess in the hearing until the witness became available.

We agree with both contentions. However, whether the circumstances in this case are evaluated as a speedy trial violation or as an abuse of discretion in granting a midtrial recess, Chuong must establish that the error amounted to a miscarriage of justice to justify a reversal of the court's jurisdictional order. The only prejudice he asserts is that additional admissible evidence, crucial to petitioner's case, was ultimately produced after the lengthy recess period. That does not constitute a miscarriage of justice. Consequently, the jurisdictional order is affirmed.

\* \* \*

The petition to declare Chuong a ward of the court was based upon his alleged participation in a group assault of three teenaged boys on January 6, 2004. The incident was sparked by an apparently insulting comment made by Andy Le, a teenaged male walking along a sidewalk with two friends. Spotting a Honda automobile passing by, he characterized its occupants as "FOB's," which (we are told) stands for "fresh off the boat." Presumably, they heard him and took umbrage, as the car immediately made a U-turn back toward the pedestrians. Le and his friends took off running and sought refuge in an apartment complex. The Honda followed, however, and the three teenagers were soon confronted by approximately eight individuals who spoke Vietnamese.

Some of the eight began assaulting Le, and when his friend John Tran sought to help, the group set upon him as well. One of the assailants used his belt, with a heavy buckle on one end, as a weapon. The buckle was used to hit Tran in the face, causing a cut which required 10 stitches to repair. The third friend, Kevin Luong, was also struck in the head with the belt buckle.

Neither Le, Tran nor Luong identified Chuong as being among the attackers. Nonetheless, Tran did subsequently identify an individual named Thanh Nguyen as one of them. Officer James Kingsmill of the Westminster Police Department subsequently visited Nguyen's home to question him about the incident.

When Kingsmill arrived at Nguyen's home, he saw six Asian males standing outside. One of the six was Chuong. Kingsmill questioned Chuong about whether he had been involved in the fight on January 6, 2004. Chuong admitted being present, but initially denied any involvement. After further questioning, Chuong acknowledged that he had held back two of the three victims while the third (presumably Le) was being beaten. Based upon that admitted involvement, the instant wardship petition was filed against Chuong on April 7, 2004.

On April 22, 2004, counsel was appointed for Chuong, and the pretrial hearing and jurisdictional hearing were set for April 29, 2004 and May 5, 2004, respectively. Thereafter, the jurisdictional hearing was continued several times, with Chuong waiving time in each instance. The matter was ultimately set for a jurisdictional hearing on September 8, 2004. It then trailed, without any additional waiver of time, until September 14, 2004, the sixth day of the seven-day grace period identified in Welfare and Institutions Code section 682, subdivision (e). On that date, the parties announced they were ready to proceed, and stipulated to allowing a court commissioner to sit as a temporary judge in the case. The hearing commenced in the afternoon.

The prosecutor offered the testimony of two of the victims during that first afternoon. The next day, September 15, 2004, the hearing again occupied only the afternoon session. The prosecutor offered the testimony of the third victim, plus the police officer who had responded to the initial call regarding the assault. None of those four witnesses identified Chuong as being present, let alone involved in the incident.

After completing his examination of the police officer who initially responded, the prosecutor informed the court that although he had one more witness, Officer Kingsmill, "we haven't heard from [him] . . . I'm unsure of the status." The court inquired whether Kingsmill was under subpoena, and the prosecutor responded "Yes, I believe he is." He explained "[We] can't get ahold of him today. . . . I believe he is involved in a special assignment." The prosecutor asked to trail the case to September 24 (nine days hence), "to know for sure that he is available."

Chuong's counsel objected, noting the case had a two-day estimate, and the defense had all its witnesses under subpoena and ready to testify in accordance with that expectation. She also noted that if Officer Kingsmill was in fact on a "special assignment," then "notice of that could have been provided to us to work out something at that point, but to just bring it up on the date he is supposed to be called . . . and ask for a continuance is absolutely not okay with us."

Counsel pointed out that Chuong "has a right to have his trial finished. It was a two-day estimate, and to trail it over a week for a two-day trial is not—we are objecting, and [the prosecutor] answered ready yesterday when we began this trial . . . ."

The court, noting it was already 3:30 in the afternoon, stated he would give the prosecutor until the next day to produce Officer Kingsmill: "Since this officer is on special detail, I will give you to tomorrow." The prosecutor then stated that Kingsmill "may not be available" the next day, and pointed out that the petitioner had actually been ready to proceed back on August 30, but that Chuong had obtained a continuance which appeared, in retrospect, to have been unnecessary. The court responded: "Your officer is under subpoena. He decided that something else is more important than this. That's the decision that he has to make. *There is no good cause to continue because he is not injured, he is not—I haven't heard anything that establishes good cause for him not to be here.*" (Italics added.)

When the parties reconvened the next day, the prosecutor informed the court that Kingsmill had not been subpoenaed, was not present, and would not be available to testify until September 24. The court inquired as to why Kingsmill was unavailable, but the prosecutor could not explain. Instead, he chose again to focus the court on the fact that the petitioner would have been ready to proceed on August 30, 2004, and that although Kingsmill claimed to be unavailable on that date, he had agreed to "make himself available for the 31st of August." The prosecutor again expressed skepticism about the necessity of the continuance obtained by Chuong on that date, which had caused the hearing to be rescheduled to September 8, 2004. Nonetheless, a court liaison purportedly "trailed [Kingsmill] from the 31st to September 8th . . . and even though the officer was not under subpoena, he nevertheless made himself available . . . on the 13th."

The prosecutor then acknowledged that Kingsmill was actually unavailable to testify at any time after September 13, but explained that "the officer's unavailability after the 13th was not communicated to me until yesterday when I called in to have him be here yesterday afternoon for the trial." Despite Chuong's further objection, the court was persuaded to grant the recess.

When the hearing resumed eight days later, Kingsmill testified, offering the only evidence tying Chuong to the incident. At the conclusion of the hearing, the court found Chuong culpable for all three counts of assault. One of the three counts, relating to the most seriously injured victim, was found to be a felony, while the other two counts were reduced to misdemeanors on the court's own motion.

## I

We first address the assertion that Chuong was denied his right to a speedy trial. Although respondent suggests that no such right may exist in juvenile delinquency proceedings, several courts have concluded otherwise. (*In re Robert B.* (1995) 39 Cal.App.4th 1816 [46 Cal.Rptr.2d 691]; *People v. Superior Court (Jorge C.)* (1990) 224 Cal.App.3d 1114 [274 Cal.Rptr. 439]; *Richard N. v. Superior Court* (1981) 116 Cal.App.3d 579 [172 Cal.Rptr. 512].) Respondent cites no cases in which the court refused to recognize a speedy trial right in a delinquency matter.

Moreover, the statutory provisions establishing the juvenile delinquency process include very specific deadlines for processing a wardship petition. Welfare and Institutions Code section 657, subdivision (a), requires that a petition must be set for hearing within 30 days of its filing. Moreover, while Welfare and Institutions Code section 682, subdivision (b) allows for continuances of the hearing, such continuances may be granted only upon a showing of some "good cause" other than the consent of the parties.[1] In this case, several such continuances were granted, with the final one setting the trial for September 8, 2004. Thus, pursuant to subdivision (e) of Welfare and Institutions Code section 682, the hearing was required to actually commence within seven days of that date, or no later than September 15, 2004.[2]

Chuong argues that the unavailability of the petitioner's key witness to testify at a trial commencing on either September 14, 2004, the date the

---

[1] Indeed, the statute explicitly requires that "[w]henever any continuance is granted, the facts which require the continuance shall be entered into the minutes." That was not done in this case. Instead, each of the orders continuing the hearing merely reflect Chuong's waiver of time. As the statute expressly states that "[n]either stipulation of the parties nor convenience of the parties is, in and of itself, good cause" (Welf. & Inst. Code, § 682, subd. (b)), such a waiver—evidencing nothing more than Chuong's agreement—is an inadequate recitation of good cause.

[2] "When any hearing is continued pursuant to this section, the hearing shall commence on the date to which it was continued or within seven days thereafter whenever the court is satisfied that good cause exists and the moving party will be prepared to proceed within that time." (Welf. & Inst. Code, § 682, subd. (e).)

prosecutor announced ready for trial, or on September 15, 2004, the actual last date upon which the hearing could commence, constituted a violation of Chuong's speedy trial right. Chuong suggests that "[i]n reality the trial had not commenced" on those dates, because the prosecutor was indisputably unprepared to try the matter to conclusion. We are inclined to agree.

In *Rhinehart v. Municipal Court* (1984) 35 Cal.3d 772 [200 Cal.Rptr. 916, 677 P.2d 1206], our Supreme Court analyzed the issue of when a trial is commenced for purposes of the speedy trial right. In that case, the dispute had to do with the ability of the court itself, rather than the prosecutor, to complete the proceedings at the time the trial was assertedly commenced, but we think the analysis is applicable here as well.

In *Rhinehart,* the Supreme Court reversed the conviction of a criminal defendant on the ground that merely impaneling a jury on the afternoon of the last date defendant could be brought to trial, with the understanding that the trial would thereafter be recessed for at least an additional week, did not comply with speedy trial requirements. The Supreme Court cited with approval the analysis included in *Sanchez v. Municipal Court* (1979) 97 Cal.App.3d 806, 810 [159 Cal.Rptr. 91], and *People v. Amati* (1976) 63 Cal.App.3dSupp. 10 [134 Cal.Rptr. 61]. In those cases, the Court of Appeal had determined that a case is "brought to trial" for purposes of the speedy trial statutes if the jury is impaneled "in good faith," meaning " 'the record objectively shows that a case is assigned for trial to a judge who is available to try the case and the court has committed its resources to the trial, the parties answer ready and a panel of prospective jurors is summoned and sworn, the trial process has commenced and defendant has been "brought to trial" as that term is used in Penal Code section 1382.' " (*Rhinehart v. Municipal Court, supra,* 35 Cal.3d at p. 778.) The Supreme Court further agreed that in some cases " 'subsequent events may disclose that the court was not in fact available or ready to process the case to conclusion without unnecessary delay. In such case it could then appear that the trial had not in fact commenced.' " (*Ibid.,* quoting *Sanchez, supra,* 97 Cal.App.3d at p. 813.)

In this case, an examination of the objective record demonstrates that the prosecutor (whether he subjectively knew it or not) was not in fact "ready to process the case to conclusion" on September 14, 2004, the date Chuong's hearing assertedly commenced. Nor could he have been ready the next day, which was the last date on which the hearing could be commenced. The prosecutor's indispensable witness, who represented the only evidence linking Chuong to the incident at issue, was unavailable to testify on either date,

and would continue to be unavailable until long after the hearing was expected to be concluded. Applying the *Rhinehart* analysis to these facts suggests the hearing did not, therefore, "commence."[3]

To be clear, this is also not a situation in which reasonable minds could differ as to whether the prosecutor had sufficient evidence to proceed with his case. We have no interest in second-guessing the prosecutor's discretionary determination concerning that issue. But without Officer Kingsmill's testimony, there was simply no evidence whatsoever to tie Chuong to the assault.

■ In any event, the speedy trial violation, in and of itself, does not entitle Chuong to a reversal of the court's order. Because Chuong waited until after the jurisdictional hearing had been completed, and the court had found against him, before bringing his speedy trial claim to the appellate court, he must affirmatively demonstrate he was *prejudiced* by the delay. "Prejudice becomes an issue for a statutory speedy trial claim only when the defendant waits until after the judgment to obtain appellate review. '[O]nce a defendant has been tried and convicted, the state Constitution in article VI, section 13, forbids reversal for nonprejudicial error,' and so on appeal from a judgment of conviction a defendant asserting a statutory speedy trial claim must show that the delay caused prejudice, even though the defendant would not be required to show prejudice on pretrial appellate review." (*People v. Martinez* (2000) 22 Cal.4th 750, 769 [94 Cal.Rptr.2d 381, 996 P.2d 32], quoting *People v. Johnson* (1980) 26 Cal.3d 557, 575 [162 Cal.Rptr. 431, 606 P.2d 738].)

In this case, the only "prejudice" claimed by Chuong is that relevant and admissible evidence linking him to the assault, which was not available to be presented earlier, was introduced against him after the trial was recessed for eight days. That does not constitute "prejudice" in the sense that it made his trial unfair. (See *People v. Wilson* (1963) 60 Cal.2d 139, 154 [32 Cal.Rptr. 44, 383 P.2d 452] ["At the time of [defendant's] objection to such setting, more than seven months had already elapsed since the filing of the information, due in most part to numerous continuances granted at defendant's request or with

---

[3] We do not, however, agree with Chuong's suggestion that the granting of a midtrial recess, in and of itself, would demonstrate a speedy trial violation. There are numerous situations in which a recess during trial may be warranted, despite the fact that at the time the trial commenced, the objective facts demonstrated that both the court and the prosecutor were prepared to try the case to conclusion. Sometimes circumstances change, other events intervene, or the evidence simply does not play out exactly as anticipated. The courts do need to be somewhat flexible, in the interests of justice. What brings this case within the rubric of the speedy trial analysis, however, is that the objective facts demonstrate the prosecutor was not prepared to try the case to conclusion *when it was commenced.* Indeed, nothing changed between the time he announced "ready" and the time he sought the recess.

his consent; and defendant fails to demonstrate how a further delay of less than one-third of that duration could have affected in any respect the fairness of his subsequent trial."].)

Indeed, the mere fact that evidence sufficient to establish the prosecutor's case was introduced against the defendant only *after* his speedy trial rights were violated could never be considered the requisite prejudice to justify reversal of the judgment. Such a rule would nullify the requirement of "prejudice" as a separate element, since in the usual case, *all* the evidence against the defendant would be introduced only after the speedy trial violation had occurred. In this case, Chuong does not claim surprise as to the content of Kingsmill's testimony, or suggest that his ability to counter that evidence was somehow diminished because of the additional brief delay in the hearing.[4]

In short, Chuong does not—cannot—claim that the delay in his hearing, however erroneous, resulted in any miscarriage of justice. (Cal. Const., art. VI, § 13.)[5] Consequently, we reject his claim that the court's order must be reversed based upon the violation of his speedy trial right.

## II

Analyzing the record in light of a claim the court abused its discretion in granting the prosecution's request for a recess produces the same result. We are in complete agreement with the contention the court erred, but again cannot discern any legal prejudice.

 "The decision whether to grant a continuance of a hearing to permit counsel to secure the presence of a witness rests in the sound discretion of the trial court. (*People v. Howard* (1992) 1 Cal.4th 1132, 1171 [5 Cal.Rptr.2d 268, 824 P.2d 1315]; *Owens v. Superior Court* (1980) 28 Cal.3d 238, 250–251 [168

---

[4] Chuong's counsel did suggest, at the time the recess was requested, that she would likely be unable to complete the hearing after the requested recess, due to a change in her employment. However, this concern never came to fruition, as counsel was present after the recess period, and did complete the hearing.

[5] Article VI, section 13 of the California Constitution provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

Cal.Rptr. 466, 617 P.2d 1098].) 'To establish good cause for a continuance, [a party has] the burden of showing that he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven.' (*People v. Howard, supra,* 1 Cal.4th at p. 1171.)" (*People v. Roybal* (1998) 19 Cal.4th 481, 504 [79 Cal.Rptr.2d 487, 966 P.2d 521].)

In this case, the prosecutor failed to demonstrate *any* diligence in securing Kingsmill's attendance at the September 14, 2004 hearing. Although petitioner argues that the prosecutor did exercise diligence, in at least *attempting* to subpoena Kingsmill for *the earlier hearing date,* we cannot agree that is sufficient. The fact the prosecutor made some effort to obtain the witness's testimony in connection with an earlier hearing date in no way establishes any level of diligence in securing the testimony for the actual hearing for which the prosecutor announced "ready." In the absence of any evidence that an attempt was made to actually secure Kingsmill's attendance for that hearing date, his absence could not constitute good cause to recess the hearing. Moreover, the fact Chuong was not likely to be prejudiced by the delay—the issue which the court ultimately focused on in deciding to grant the recess—was not a substitute for the initial showing of good cause. The trial court's initial reaction to the continuance motion—denial—was correct. The lack of prejudice argument which ultimately swayed the court was a red herring.

But again, because the hearing was completed, and this issue reaches us only after the court issued its jurisdictional order, Chuong now must demonstrate that the court's error in allowing the recess in fact caused him legal prejudice—i.e., that a miscarriage of justice resulted. In the absence of such a showing, which Chuong has not made, we cannot reverse the judgment. Kingsmill's testimony was relevant and properly admissible at Chuong's hearing, and there was no showing that the improper delay of eight additional days in completing the hearing interfered with Chuong's ability to rebut it.

The jurisdictional order is affirmed.

Aronson, J., concurred.

**SILLS, P. J.,** Concurring.—I am in doubt that a week's recess is erroneous or that the record fails to provide *some* good cause to support the trial court's ruling. Thus, "I write separately to set forth my concerns and concur in the judgment—*dubitante*." (*City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 634 [26 Cal.Rptr.3d 304, 108 P.3d 862] (conc. opn. of Brown, J.).)