Filed 3/19/14  In re Brandon C. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re BRANDON C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. BRANDON C., Defendant and Appellant. | A138960 (Alameda County Super. Ct. No. SJ13020183) **ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on February 18, 2014, be modified as follows:

1. On page 10, following the end of the last paragraph on page 9, insert the following one and one-half pages of discussion:

**Appellant relies heavily upon *In re Edwayne V.* (1987) 197 Cal.App.3d 171, 176, which held that the juvenile court's refusal to release the minor from custody when the jurisdictional hearing could not be commenced within the 15-day period required dismissal of the petition. As in the present case, the minor's counsel had objected to the continuance beyond the required time period, the court had denied**

1

the minor's request for release, and the minor's case had proceeded to jurisdiction and disposition. The opinion in *Edwayne V.* does not discuss prejudice, and appellant views it as authority for the proposition that dismissal is required without any requirement of showing prejudice in these circumstances.

As *Edwayne V.* did not discuss its reasons for departing from the fundamental state constitutional rule that reversal on appeal requires a showing of prejudice (*People v. Martinez, supra,* 22 Cal.4th at p. 769; *People v. Johnson, supra,* 26 Cal.3d at p. 575; *In re Chuong D., supra,* 135 Cal.App.4th at p. 1311), we decline to follow it in this respect.

Appellant emphasizes that, as discussed in *In re Robin M.* (1978) 21 Cal.3d 337, 342-343, the Legislature's overhaul of the Juvenile Court Law in 1961 "substantially followed the recommendations and proposals of a special study commission on juvenile justice," which "found that one of the 'major problems' with California's Juvenile Court Law was the 'excessive and unwarranted detention of children in the state.' " (*Robin M.*, at pp. 342-343, quoting Report of the Governor's Special Study Commission on Juvenile Justice, pt. I—Recommendations for Changes in California's Juvenile Court Law (1960).) The statutory time limits on juvenile hearings and detentions followed the Commission's recommendation that maximum time limits be set forth in the law "[i]n order to 'minimize the length of detention.' " (*Robin M.*, at p. 343.)

In keeping with this concern to avoid prolonged detention of juveniles, our courts have repeatedly held that, absent waiver, a minor must be discharged from custody if his or her jurisdiction hearing is not held within 15 judicial days after a detention hearing. (*In re Robin M., supra,* 21 Cal.3d at p. 347; *In re Kerry K.* (2006) 139 Cal.App.4th 1, 5-6; *A.A. v. Superior Court* (2003) 115 Cal.App.4th 1, 6.) To our knowledge, most of the challenges to prolonged detention in this context have been by writ petitions (as, indeed, was appellant's original challenge). (*In re Robin M., supra,* 21 Cal.3d 337; *In re Kerry K., supra,* 139 Cal.App.4th 1; *A.A. v. Superior Court, supra,* 115 Cal.App.4th 1.) While finding error in the refusal to release the

2

**minor, these cases denied writ relief where, subsequent to the filing of the writ petition, the minor had been released (*In re Kerry K,* at pp. 4, 7) or the juvenile petition had been sustained (*In re Robin M.,* at pp. 341 & fn. 6, 348.) None of these cases suggest that where a juvenile case has proceeded to disposition, it must be reversed on appeal due to pre-adjudication error in failing to release the minor from custody in violation of statutory time limits for holding the jurisdictional hearing.**

2.     Following this new addition, the opinion shall continue as originally issued, commencing with the paragraph that reads, "Here, appellant has not attempted to demonstrate prejudice, relying upon his contention that he is not required to do so. We are aware of no prejudice resulting from the delay in proceedgins from March 11 to March 29."

3.     At the end of the paragraph just quoted in paragraph 2 of this Order, the following new footnote should be added, which will be numbered footnote 1:

**[1] In a petition for rehearing, appellant urges that the parties have not had the opportunity to brief the issue of whether prejudice must be shown in the circumstances presented here. We are not persuaded. The rule that a judgment will not be reversed on appeal absent a demonstration of prejudice is too fundamental for appellant to avoid by relying upon a single case that does not directly address the issue and has never been cited for the proposition that prejudice is not required."**

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Dated: _____

_____
Kline, P.J.

3

Filed 2/18/14 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re BRANDON C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRANDON C.,<br><br>        Defendant and Appellant. | A138960<br><br>(Alameda County<br>Super. Ct. No. SJ13020183) |

Brandon C. appeals from juvenile court orders finding that he committed a robbery and received stolen property, and placing him on probation.  He contends the juvenile court was required to dismiss the petition or release him from custody because the jurisdictional hearing was not held within the time limit prescribed by statute; the true finding on the allegation of receiving stolen property must be reversed, and the maximum term of confinement adjusted, because the allegation was based on the same property as the theft allegations; the probation condition requiring appellant to be "of good citizenship" must be stricken as unconstitutionally vague; and the probation condition forbidding appellant from being in the company of anyone possessing dangerous or deadly weapons must be amended to include a knowledge requirement.  We shall order certain amendments to the juvenile court's orders and, as so amended, affirm those orders.

1

## STATEMENT OF THE CASE

On January 7, 2013, the Alameda County District Attorney filed a petition under Welfare and Institutions Code section 602, subdivision (a), alleging that appellant, then 17 years old, committed a robbery (Pen. Code, § 211) and received stolen property (Pen. Code, § 496). After a contested jurisdictional hearing on April 29, the court found both allegations true and found the maximum period appellant could be confined for these offenses was five years eight months. On June 6, the court adjudged appellant a ward of the court and placed him under the supervision of the probation officer, to reside in his mother's home.

Appellant filed a timely notice of appeal on June 13, 2013.

## STATEMENT OF FACTS

At about 9:45 p.m. on December 30, 2012, Goncalo Mendes was walking along Milvia Street in Berkeley, heading home from a cafe where he had been doing some work. He heard steps behind him and then was pulled to the ground with his neck in a choke hold, his back and head hitting the ground. He was pulled a short distance into an alley or darker area and, as he struggled, the person who had pulled him down kept him on the ground, used his hands to try to cover Mendes's face and eyes, and hit Mendes in the face once or twice. Mendes and the assailant were face-to-face and Mendes was able to glimpse the assailant. A second person went through Mendes's pockets and clothing. Mendes tried to fight back, punching at the person who had taken him down and biting his thumb, and pulling on his backpack as the other assailant tried to take it. The backpack was the most valuable thing Mendes had with him because all his work was in it. Mendes said, " 'I'm a student, I have nothing with me,' " and the person going through his pockets said, " 'We don't give a fuck. Hand us everything you have.' " Mendes handed him his cell phone, a white Sony Ericsson smart phone, hoping the assailants would leave, but they continued trying to take his possessions. Mendes's backpack broke free, the person on his left took it, and the two assailants walked away. Mendes started to follow them but soon stopped and ran home, where he told his landlady what had happened. She dialed 911 for him.

2

Mendes described both his assailants as "medium sized" black males in their twenties, wearing dark pants and fluffy black jackets. He gave a description to the 911 operator and then, briefly, to the officer who arrived at his home. Police Officer Rochell Bledsoe, the responding officer, testified that Mendes described the incident and the perpetrators, describing one of the assailants as approximately six feet tall and the other as about five feet eight or nine inches, and saying that he had bitten one of the men's fingers. Bledsoe testified that Mendes's face was red and swollen; it appeared he had been punched several times.

At about 9:58 p.m., Police Officer Benjamin Phelps received a call regarding a robbery around Milvia and Virginia Streets and began driving around the area searching for suspects matching the description Mendes had given. Seeing a person run across the street at Hearst and McGee, he drove closer and saw two younger black males in dark clothing walking close to each other on the south side of the street. Phelps drove near, rolled down his window, illuminated the area with his spotlight and asked if he could speak with the two. The one in back, whom Phelps identified as appellant, stopped; the one in front, the taller of the two, walked a few paces and then stopped. Noticing that appellant was sweating and out of breath, Phelps asked where he was coming from and appellant said he had been playing basketball in the park across the street. The lights on the court were not on and Phelps did not recall there being any people on the court. The officer called the second person over and noticed that he was also perspiring and out of breath. Phelps examined the suspects' fingers and saw that one of appellant's pointer fingers had some "discoloration and indentation." Police Officer Miguel Salazar, who arrived at the location of the detention, searched appellant and recovered a black Samsung cell phone, and Apple Ipod, a white cell phone and a set of keys. The items on the white cell phone appeared to be in Portuguese.

Officer Bledsoe brought Mendes to the location where appellant had been detained. Bledsoe testified that Mendes was shown first one suspect and then the other, and stated that they appeared to be the people involved in the incident based on size, height, weight and clothing. Mendes testified that he recognized the two as fitting the

3

description he had given of clothing, size, age, gender and ethnicity; he did not more specifically recognize their faces. A few minutes after this identification, the police showed Mendes a gray Toshiba laptop and a white Sony Ericsson smart phone they had recovered, and Mendes identified the items as his. The backpack was never returned to Mendes.

Defense

The defense presented Dr. Robert Shomer as an expert on eyewitness identification. He testified that eyewitness identification is very unreliable even under the best circumstances, resulting in more erroneous convictions than any other single factor. The major basis for evaluating the trustworthiness of an identification is the specificity of the initial description given by the witness, and "vague general descriptions" are associated with erroneous identifications because they fit so many people. High stress leads to "significantly poor" eyewitness identification; other factors that lead to less reliable identification include an incident involving more than one perpetrator, physical contact or fear that the perpetrator is armed, cross-racial identification, and suggestive procedures in the identification. Field show-ups are much more likely to result in erroneous identifications than photo arrays; because the witness is still in a heightened emotional state, the witness is more susceptible to the suggestion inherent in being shown a person the police have chosen as a suspect. Presented with a hypothetical based on the facts of this case, Shomer testified that the factors bearing on accuracy of the identification would be the sudden, highly stressful attack by two individuals, the vague and general description of the perpetrators, and use of an inherently suggestive identification procedure while the witness was still highly emotionally aroused.

Appellant's defense focused on challenging Mendes's identification of appellant, drawing on Shomer's testimony and suggesting a different person could have been responsible for the attack and robbery, perhaps the one Phelps saw running across the street before he came upon appellant and his companion. Defense counsel argued that appellant could have simply found Mendes's cell phone on the ground and picked it up,

4

that there was no evidence appellant had any bruises or cuts consistent with having been in a fist fight, and that the photographic evidence did not indicate appellant had been bitten.

## DISCUSSION

### I.

Appellant contends that the juvenile court's orders must be reversed because the jurisdictional hearing was not held within the time limit specified by statute and, once that limit was exceeded, the court was required to dismiss the petition or release appellant from custody. When a minor is detained in custody at the time a petition is filed, the jurisdictional hearing must begin within 15 judicial days of the order directing detention. (Welf. & Inst. Code, § 657, subd. (a)(1); Cal. Rules of Court, rule 5.774(b); *In re Maurice E.* (2005) 132 Cal.App.4th 474, 477.) A continuance may be granted "only upon a showing of good cause and only for that period of time shown to be necessary by the moving party at the hearing on the motion." (Welf. & Inst. Code, § 682, subd. (b); rule 5.776(a).) Absent a continuance under rule 5.776, when a jurisdiction hearing is not begun within this time limit, the court must order the petition dismissed. (Rule 5.774(d).) Another petition based on the same allegations may be filed, but the child may not be detained. (*Ibid.*)

The petition in the present case was filed on January 7, 2013. on January 18, counsel was appointed for appellant and, at the request of counsel, the case was set for pretrial on January 31. Appellant waived time. He was placed on GPS (global positioning system) supervision in his mother's home.

On January 31, appellant was remanded into custody and withdrew his time waiver. Under the rules described above, the jurisdiction hearing was required to begin within 15 court days, by February 21. The pretrial hearing was continued to February 7, and the jurisdiction hearing set for February 21.

On February 7, defense counsel asked the court to give appellant a second chance on GPS monitoring and the court declined the request. The pretrial hearing was

continued to February 19, then continued to February 20 due to the illness of defense counsel and her family.

On February 21, the prosecutor was ready to proceed with the jurisdiction hearing but defense counsel was not: She explained that the prosecutor had provided her the day before with a number of recordings, including Mendes's call to 911, which raised new issues she needed to explore. Appellant waived time until March 11, the new date set for the jurisdiction hearing.

At a pretrial hearing on March 7, the prosecutor informed the court that Officer Salazar would not be available on the date set for the jurisdiction hearing because he was on paternity leave, his wife having given birth earlier than expected, but would be available on April 4. The prosecutor was also waiting to hear whether a different officer might be able to testify instead of Salazar. The prosecutor represented that appellant had waived time, but defense counsel stated he had entered only a limited time waiver to March 11. The court maintained the March 11 date for the jurisdictional hearing.

On March 11, at a hearing before a different judge, the prosecutor requested a continuance because Officer Salazar was unavailable and no other officer was able to testify regarding the search in which Mendes's cell phone was found in appellant's pocket. The prosecutor explained that she had been ready to proceed with the jurisdiction hearing on February 21, but the case was continued at the request of defense counsel, over the prosecution's objection and, that at the pretrial hearing, the court had declined to continue the March 11 date in order to give the prosecutor time to look into finding another officer to testify in Salazar's place. The prosecutor asked for the hearing to be set for March 28, the last date permissible under the statute if appellant were to "pull time," and stated that Salazar had indicated he might be able to return a few days before his scheduled date of April 4. Defense counsel reiterated that appellant had not entered a general time waiver but only a limited one, waiving time only until March 11. Counsel argued there was no good cause for a continuance and, if the prosecution was not ready to proceed, the court should dismiss the petition and release appellant. The prosecutor responded that there was "no such thing as a limited time waiver" and that the officer's

6

unavailability was an unforeseen circumstance constituting good cause to avoid dismissal. The court agreed with the prosecutor on the issue of the limited time waiver and continued the matter to March 28. Appellant withdrew his time waiver in light of the court having found it to be a general one.

Appellant filed a petition for writ of mandate and request for stay, which this court denied on March 26.

On March 28, the matter was again before the original juvenile court judge. Summarizing an in-chambers discussion, the court noted that while the prosecution was prepared to go forward with one witness, another witness was unavailable due to a proceeding in another courtroom, and the court's calendar was such that if not completed that day, the case would have to be continued for a couple of weeks. Noting the parties' dispute over appellant's custody status and time waiver, the court expressed discomfort over appellant remaining in custody if the case had to be continued for two weeks, as well as a question whether the officer being "on vacation" was in fact good cause for continuing the jurisdiction hearing over appellant's objection. It further noted that defense counsel had indicated she might not be ready to go forward that day for "personal reasons." Accordingly, over the prosecutor's objection, the court released appellant on GPS and set the hearing for April 29. Appellant waived time.

At the beginning of the jurisdiction hearing on April 29, in order to preserve the record regarding the March 11 denial of appellant's motion to dismiss, defense counsel moved for dismissal of the petition for violation of appellant's right to a speedy trial. The motion was denied, the court stating it was a matter for the Court of Appeal.

What is at issue on this appeal is the propriety of the continuance from March 11 until March 28, when appellant was released from custody. This was the only continuance that appellant did not request and was ordered over his objection. As appellant points out, the court did not state that it was ordering this continuance upon a finding of good cause but, rather, upon finding that appellant's time waiver on February 21 was a general one rather than a limited waiver until March 11.

7

Appellant's position is that because he entered a limited time waiver to March 11, the court was required to either go forward with the jurisdiction hearing on that date or order him released from custody. While the court could have ordered a continuance upon a showing of good cause (§ 682, rule 5.776), appellant urges that no good cause was established here and, moreover, the procedural requirements for a continuance based on good cause were not met (§ 682, subd. (a), (b); rule 5.776(a)). Finally, he maintains that because he sought appellate review of the court's order before the jurisdiction hearing was held by means of a petition for writ of mandate and immediate stay, he is not required to show prejudice in order to obtain relief.

This last point is dispositive. While a speedy trial claim made *before* trial does not require a showing of prejudice (*People v. Martinez* (2000) 22 Cal.4th 750, 769), when a minor waits until after the jurisdictional hearing has been held to seek appellate review of a speedy trial claim, a violation will require reversal only upon a showing of prejudice from the delay. " 'Prejudice becomes an issue for a statutory speedy trial claim only when the defendant waits until after the judgment to obtain appellate review. "[O]nce a defendant has been tried and convicted, the state Constitution in article VI, section 13, forbids reversal for nonprejudicial error," and so on appeal from a judgment of conviction a defendant asserting a statutory speedy trial claim must show that the delay caused prejudice, even though the defendant would not be required to show prejudice on pretrial appellate review.' (*People v. Martinez*[, *supra,*] 22 Cal.4th [at p.] 769, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 575.)" (*In re Chuong D.* (2006) 135 Cal.App.4th 1303, 1311.)

Appellant's position that his filing of the writ petition obviates the need for him to show prejudice on this appeal is mistaken. In *People v. Booker* (2011) 51 Cal.4th 141, after unsuccessfully moving to set aside an indictment, the defendant filed a petition for writ of mandate, which was denied. On appeal after his trial, he contended that he was not required to make the usual showing of prejudice because he had challenged the indictment pretrial. The Supreme Court explained that while prejudice was not required to be shown in a pretrial challenge, the requirement of showing prejudice posttrial was

8

not obviated by the fact of an unsuccessful pretrial challenge. "[T]he need for a showing of prejudice depends on the stage of the proceedings at which a defendant raises the claim in a reviewing court, and not simply on whether he or she had raised the claim prior to trial. That defendant here . . . filed a pretrial writ petition does not alter the analysis as to why no showing of prejudice is required for pretrial challenges to grand jury proceedings but is required for posttrial challenges." (*Id.* at p. 157.)

The defendant in *Booker* relied in part on language in *Serna v. Superior Court* (1985) 40 Cal.3d 239, which granted a pretrial petition for writ of mandate directing the trial court to dismiss a case on speedy trial grounds without requiring a showing of prejudice. The *Serna* court had stated, "it is not unreasonable to require a felony defendant who does not seek or obtain pretrial relief to demonstrate actual prejudice when reversal of a judgment is sought on this ground on appeal." (*Id*. at p. 263.) *Booker* found *Serna* (and *People v. Stewart* (2004) 33 Cal.4th 425, another case describing the need for demonstrating prejudice in a posttrial challenge although it was not required in a pretrial challenge) consistent with the "rule that whether a showing of prejudice is required depends on the stage of the proceedings at which the claim is raised in the reviewing court. To the extent defendant reads *Serna* and *Stewart* as implying a different showing of prejudice is required for posttrial challenges based on whether there was also a pretrial challenge, he is mistaken." (*Booker, supra,* 51 Cal.4th at p. 157.)

Here, appellant has not attempted to demonstrate prejudice, relying upon his contention that he is not required to do so. We are aware of no prejudice resulting from the delay in proceedings from March 11 to March 28.

While the absence of prejudice fully resolves appellant's claim on appeal, we feel it appropriate to question the soundness of the trial court's refusal to view appellant's time waiver as "limited" rather than general. The concept of a limited time waiver has been recognized (albeit without discussion) in both juvenile and adult criminal cases. (*Raul P. v. Superior Court* (1984) 153 Cal.App.3d 294, 296 [limited time waiver to specified date for preparation of report for fitness hearing]; *People v. Lynch* (2010) 50 Cal.4th 693, 721 [limited time waiver to specified date].) Such waivers are of obvious

utility to courts laboring with crowded dockets, and a rule construing all waivers as general ones would necessarily undermine the willingness of the defense to enter short-term time waivers. (See Simon, California Preliminary Hearing and 995 Benchbook (Matthew Bender rev. ed. 2013) § 1.1.16, p. 1-13 [noting utility of "short time waivers"].) Here, the record establishes without question that appellant intended to enter a time-limited waiver. At the hearing on February 21, defense counsel sought a continuance of two weeks to explore new issues raised by the recordings she had been given by the prosecution the day before. The judge explained that he would not be available in two weeks but the case could be heard in another department on March 11. In the course of the discussion, the judge noted, "I will not be back until the 25th. I'm sure he's not going to want to wait that long, so." Defense counsel replied, "That would be correct." After settling on March 11, the court asked, "Is the minor going to waive time?" Counsel stated, "To that date, yes." This exchange demonstrates both that appellant intended a time limited waiver and that the court understood the waiver to be time limited and not general.

Had appellant's time waiver been accepted as limited, when the parties came before a different judge on March 11, the court's options were to order appellant released, to dismiss the petition without prejudice to refiling, or to order a continuance upon a showing of good cause. Because of its holding on the limited time waiver issue, the court did not reach the issue of good cause. Moreover, the procedural requirements set by section 682, subdivisions (a) and (b), and rule 5.776(a)—including notice of the motion to continue for good cause and entry of the court's findings in the minutes and order— were not followed. It bears noting, however, that a finding of good cause for the continuance likely would not have been an abuse of discretion based on Officer Salazar's unavailability due to the recent, unexpectedly early birth of his child. (*In re Maurice E., supra,* 132 Cal.App.4th 474 [good cause established for short continuance where officer unavailable due to birth of baby and absence of alternate child care].)

10

## II.

Appellant contends, and respondent concedes, that the juvenile court erred in sustaining the count of receiving stolen property, which was based upon the same property taken in the robbery (Mendes's cell phone). Absent an exception not relevant here, a person may not be convicted of both receiving stolen property and theft of the same property. (*People v. Garza* (2005) 35 Cal.4th 866, 874; *In re Kali D.* (1995) 37 Cal.App.4th 381, 384-385, disapproved on other grounds in *People v. Allen* (1995) 21 Cal.4th 846, 861, fn. 16; Pen. Code, § 496.) Respondent agrees that the true finding on the receiving stolen property count must be stricken and the maximum term of confinement must be reduced to five years, the aggravated term for robbery. The court's orders shall be amended to reflect these changes.

## III.

The minute order from the dispositional hearing includes among the conditions of appellant's probation an order that he "[b]e of good citizenship and good conduct." Appellant contends this probation condition is unconstitutionally vague. This challenge is permissible despite appellant's failure to raise it below because it raises "a pure question of law, easily remediable on appeal by modification of the condition." (*In re Sheena K.* (2007) 40 Cal.4th 875, 888.)

" ' "It is an essential component of due process that individuals be given fair notice of those acts which may lead to a loss of liberty. [Citations.] This is true whether the loss of liberty arises from a criminal conviction or the revocation of probation. [Citations.] [¶] ' "Fair notice" requires only that a violation be described with a " 'reasonable degree of certainty' " . . . so that "ordinary people can understand what conduct is prohibited." . . . .' " [Citation.]' (*In re Angel J.* (1992) 9 Cal.App.4th 1096, 1101-1102, quoting *In re Robert M.* (1985) 163 Cal. App. 3d 812, 816, quoting *Burg v. Municipal Court* (1983) 35 Cal.3d 257, 270–271.)" (*In re Byron B.* (2004) 119 Cal.App.4th 1013, 1018.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of

11

vagueness. (*People v. Reinertson* (1986) 178 Cal.App.3d 320, 324-325.)" (*In re Sheena K., supra,* 40 Cal.4th at p. 890.)

The requirement that appellant "[b]e of good citizenship and good conduct" is general, imprecise, and subjective; it provides no specificity as to what conduct would violate the probation condition. Respondent suggests that this condition merely refers to appellant obeying all laws and following the conditions of his probation. Specifically, respondent maintains the challenged condition is "akin" to the requirements orally recited by the court that appellant "[o]bey all city, county, state, federal laws and ordinances," "[o]bey his parents, legal guardian or caregiver," "attend school regularly, obey school rules and regulations, and not leave the school campus during school hours without the permission of school officials or the probation officer" and attend "26 consecutive weekends for a program of citizenship training and work." This list of specific conditions, however, only demonstrates the generality of the one appellant challenges. If it is to be interpreted as respondent suggests, it is redundant and unnecessary; if it purports to refer to additional conduct, it fails for want of specificity providing notice of the conduct it would encompass. The condition must be stricken.

## IV.

Appellant's final challenge is to the probation condition providing: "Do not associate with anyone who uses or possesses dangerous nor deadly weapons nor explosive devices nor remain in any vehicle where such weapons are present." Appellant argues that without an express requirement of knowledge, the condition is unconstitutionally vague and overbroad because he could violate it unknowingly.

Respondent agrees that in order to pass constitutional muster, a probation condition prohibiting possession of certain items or association with certain people must include a requirement that the probationer knowingly engage in the prohibited conduct. (*In re Sheena K., supra,* 40 Cal.4th at p. 892.) "California appellate courts have routinely added an explicit knowledge requirement to probation conditions prohibiting a probationer from associating with certain categories of persons, frequenting or remaining in certain areas or establishments, and possessing certain items. (*People v. Kim* [(2011)]

12

193 Cal.App.4th [836,] 843-845, and cases cited therein.) '[T]here is now a substantial uncontradicted body of case law establishing, as a matter of law, that a probationer cannot be punished for presence, possession, association, or other actions absent proof of scienter.' (*People v. Patel* [(2011)] 196 Cal.App.4th [956,] 960.)" (*People v. Moore* (2012) 211 Cal.App.4th 1179, 1184-1185, fn. omitted.)

Respondent asks us to follow the approach of *Patel,* which held that because the law was so clear that a probationer could not be punished for actions such as presence, possession, or association absent proof of knowledge, the court would no longer entertain vagueness challenges about such conditions not including express knowledge requirements. (*People v. Patel, supra*, 196 Cal.App.4th at pp. 960-961.) Other courts have declined to follow this approach, instead continuing to modify or strike conditions as appropriate in each case. (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1351; *People v. Moses* (2011) 199 Cal.App.4th 374, 381.) We will continue to adhere to the rule established in *In re Sheena K., supra,* 40 Cal.4th at page 892, that "modification to impose an explicit knowledge requirement is necessary to render the condition constitutional." (See *People v. Pirali, supra,* 217 Cal.App.4th at p. 1351.) The probation condition shall be modified to include a knowledge requirement.

## DISPOSITION

The true finding on count two, receiving stolen property, is reversed. The juvenile court's minute order for the jurisdiction hearing shall be amended by striking the true finding on count two and specifying that the maximum term of confinement is five years. The minute order for the disposition hearing shall be amended to strike the true finding on count two. The probation condition requiring that appellant "be of good citizenship and good conduct" shall be stricken. The probation condition concerning weapons shall be modified to provide, "Do not associate with anyone you know to use or possess dangerous nor deadly weapons nor explosive devices nor remain in any vehicle where you know such weapons are present." With these amendments and modifications, the juvenile court's orders are affirmed.

13

 

 

 

 

                                 _____

                                 Kline, P.J.

We concur

_____

Haerle, J.

_____

Brick, J.*

     * Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14