**Electronically Filed
Supreme Court
SCWC-13-0003039
12-AUG-2016
08:03 AM**

SCWC-13-0003039

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

_____

STATE OF HAWAIʻI, Petitioner/Plaintiff-Appellee,

vs.

VICENTE KOTEKAPIKA HILARIO, Respondent/Defendant-Appellant.

_____

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0003039; CR. NO. 11-1-0023)

MEMORANDUM OPINION
(By: Recktenwald, C.J., Nakayama, McKenna, Pollack, and Wilson, JJ.)

## I.  Introduction

On January 19, 2011, Vicente Kotekapika Hilario ("Defendant" or "Hilario") was charged with five counts related to the December 17, 2010 shooting death of Aureo Moore ("Moore"): Murder in the First Degree in violation of Hawaiʻi Revised Statutes ("HRS") § 707-701(1)(c) (2014) (Count 1), Murder in the Second Degree in violation of HRS § 707-701.5

(2014) (Count 2), Retaliating Against a Witness in violation of HRS § 710-1072.2 (2014) (Count 3), Intimidating a Witness in violation of HRS "Section 710-1071(1)(a/b/c) [sic]" (2014) (Count 4), and Bribery of a Witness in violation of HRS "Section 710-1070(1)(a/b/c) [sic]" (2014) (Count 5).  After a jury found Hilario guilty of all counts except Count 2,[1] a "Judgment Guilty Conviction and Sentence" ("Judgment") was entered by the Circuit Court of the Fifth Circuit ("circuit court" or "trial court") on July 25, 2013.  Hilario was sentenced to life imprisonment.[2]

Hilario timely appealed the Judgment to the ICA, arguing, among other things, that the circuit court erred when it denied his Motion to Dismiss based on Hawaiʻi Rules of Penal Procedure ("HRPP") Rule 48 ("Rule 48") (2000).  The rule states, in part:

> Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months [i.e., 180 days] . . . from the date of arrest if bail is set or from the filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

HRPP Rule 48(b)(1); see State v. Jackson, 81 Hawaiʻi 39, 50, 912 P.2d 71, 82 (1996) (construing 6 months as 180 days) (citing State v. Hoey, 77 Hawaiʻi 17, 28, 881 P.2d 504, 515 (1994)).

_____

[1]  The jury did not reach the charge in Count 2, Murder in the Second Degree, as it found Hilario guilty as to Count 1, Murder in the First Degree.

[2]  For the purposes of sentencing, Counts 3 and 4 were merged with Count 1. As to Count 1, Hilario was sentenced to life imprisonment without the possibility of parole.  As to Count 5, Hilario was sentenced to five years of imprisonment.  The terms are to run consecutively.

According to Hilario, even when considering permissible "excluded periods," the delay of his trial to January 7, 2013 caused a violation of Rule 48. A majority of the judges on the ICA panel agreed, noting that the period from September 17, 2012 (the trial date that was set prior to January 7, 2013) to December 20, 2012 (the date Hilario filed his Motion to Dismiss) ("the relevant time period") should not have been excluded for Rule 48 purposes because the delay resulted from the circuit court's erroneous determination that a defense witness was an alibi witness, consequently requiring additional time to make necessary disclosures; thus, Hilario's trial commenced beyond the prescribed period in Rule 48, and should have been dismissed upon Hilario's motion.

Accordingly, the ICA "vacate[d] [the] July 25, 2013 Judgment and remand[ed] [the case] for dismissal of the charges with or without prejudice in the discretion of the Circuit Court of the Fifth Circuit." State v. Hilario, No. CAAP-13-0003039, at 17-18 (App. Mar. 18, 2016) (mem.). Associate Judge Lisa M. Ginoza dissented, stating that the circuit court correctly excluded the relevant time period from the 180-day limit imposed by Rule 48 because the delay was caused by Hilario's decision to

file a Notice of Alibi, and not any error of the circuit court.

See id. at 19[3] (Ginoza, J., dissenting).

On April 21, 2016, the State of Hawai'i ("State") timely

applied for writ of certiorari ("Application"), presenting two

questions:

> [1]) Whether the ICA gravely erred by rejecting the trial
> court's determination that a witness might give alibi
> testimony, where he was expected to testify that he was
> present at the shooting, and could have reasonably
> testified as to the defendant's whereabouts nearby.
>
> [2]) Even assuming that the ICA correctly determined that
> a percipient witness can never be deemed an alibi witness,
> the ICA nevertheless gravely erred by failing to determine
> whether the trial court abused its discretion in continuing
> the trial, and charging the delay to the defense, due to
> the parties' anticipated alibi disclosures, and outstanding
> unrelated discovery.

We granted the Application on June 1, 2016.

Upon review, we conclude the ICA erred in vacating the July

25, 2013 Judgment and remanding the case for dismissal on the

basis that the delay in trial was not properly excluded under

HRPP Rule 48 because the circuit court incorrectly characterized

a defense witness as an alibi witness. For the following

reasons, we conclude that it was not clearly erroneous for the

circuit court to exclude the relevant time period for Rule 48

purposes.

---

[3] The ICA Memorandum Opinion is available in the docket at entry 277.
Citations to Judge Ginoza's dissent employs the pagination of this PDF
document.

4

## II.   Background

### A.   Circuit Court Proceedings

#### 1.   Proceedings Prior to the Setting of the September 17, 2012 Trial Date

Hilario was arrested on December 17, 2010 and arraigned on January 25, 2011.  Trial was then set for April 25, 2011.  For reasons not now at issue, trial was continued to May 14, 2012.  It is uncontested that 129 days elapsed between December 17, 2010 and May 14, 2012 that are included in the 180-day "speedy trial" limitation set forth by Rule 48.  See Hilario, mem. op. at 17.

The State estimated the trial to be between four to six weeks long.  At a hearing on April 12, 2012, the circuit court judge[4] informed the parties that he would be off-island from June 13 to June 26, 2012.  Because of the estimated duration of the trial, he asked the parties how they would like to proceed given that he may need to be out of town prior to the trial's conclusion.  Both parties opposed having a substantial break during the course of the trial.  As Hilario did not wish to advance the trial, and because defense counsel was unavailable

---

[4] The Honoroable Randal G.B. Valenciano presided.

from August 9 to 20, 2012, given the court's availability, trial was re-set for September 17, 2012.[5]

### 2. Proceedings Related to the February 23, 2012 Defense Investigator's Report Containing Jens Kyler Hansen-Loo's Statement

A February 23, 2012 defense investigator's report — which recounted the investigator's January 12, 2012 conversation with Jens Kyler Hansen-Loo ("Hansen-Loo") — stated that Hansen-Loo saw a family friend, David Manaku ("Manaku"), shoot Moore:

> [O]n the morning of the shooting, [Hansen-Loo] was at his grandmother's home in Anahola.  When he awoke, . . . Hilario and David Manaku had returned from Kapaa and were making plans of going fishing.  They all left in [Hilario's] car and both [Hansen-Loo] and Manaku were dropped off on the back road between Anahola Beach and the Hawaiian Homes.  They walked down the road a short distance then went over the metal guard rail and were standing in the bushes.  A short while later [Hansen-Loo] heard [a] vehicle stop, a door slam[,] and a Caucasian male got out and the car drove off towards the beach.  The male stood under a tree next to the road.  [Hansen-Loo] added that Manaku took out a handgun from his waist band and walked towards the male from the back and the next thing he knew, Manaku shoots the guy a couple of times and the guy crouches down and Manaku shoots him again.  The male falls to the ground and they run back up the road and head into a dirt road.  [Hansen-Loo] stated that he was shocked and had no idea that Manaku was going to shoot the guy.

The February 2012 statement was at odds with Hansen-Loo's statement to police in 2010, which indicated he "didn't know what had happened."

The State received a copy of the investigator's report in March 2012.  According to the State, because Hansen-Loo, a

---

[5]  The ICA determined that the period between May 14 and September 17, 2012, was excludable for the purposes of Rule 48.  See Hilario, mem. op. at 12.  Hilario does not contest this conclusion in his Application; therefore, it is not further discussed in this memorandum.

"self-proclaimed percipient witness to Moore's murder," "refused to speak to [Kaua'i Police Department] investigators about the facts of this case since the January 12, 2102 [sic], statement to [the defense investigator]," the State filed a "Motion for an HRPP 15 Deposition of Kyler Hansen Loo" on May 3, 2012.  The circuit court orally granted the motion on May 22, 2012.

At the scheduled June 14, 2012 deposition of Hansen-Loo, without the benefit of counsel, Hansen-Loo declined to answer many of the State's questions, asserting his Fifth Amendment right against self-incrimination.  The State then filed a "Motion for an Order Compelling Discovery" on June 22, 2012, requesting that the circuit court issue an order compelling Hansen-Loo to answer deposition questions and produce documents.  At the July 3, 2012 hearing on the matter, the court appointed counsel for Hansen-Loo.  At a July 17, 2012 status conference, Hansen-Loo's counsel stated that Hansen-Loo would be invoking his Fifth Amendment right to remain silent at any future depositions.  This in fact occurred at Hansen-Loo's rescheduled deposition on August 3, 2012.

On August 10, 2012, the State filed a "Motion for a Court Order Preventing Jens Kyler Hansen-Loo from Testifying at Trial, or, in the Alternative[,] Disqualifying [Hilario's Counsel,] Keith Shigetomi" ("Motion to Prevent").  According to the State, Hansen-Loo's February 2012 statement to the defense investigator

"is simply a legally inadequate attempt to provide HRPP [Rule]

12.1, 'hip pocket' alibi evidence for Hilario." The State

explained:

> If the defense wishes to argue Hilario was somewhere else, doing something else, e.g., something other than murdering Moore . . . , HRPP [Rule] 12.1 controls. Hilario must state -- in writing -- where he was when Moore was murdered, if not, the law allows no alibi evidence.
>
> Hilario cannot rely upon [Hansen-]Loo to establish a phony alibi; Hilario must comply with HRPP [Rule] 12.1.

The State argued that for Hilario's non-compliance with the

notice and disclosure requirements of HRPP Rule 12.1,[6] the

---

[6] **Rule 12.1  NOTICE OF ALIBI**
**(a)  Notice by defendant.** If a defendant intends to rely upon the defense of alibi, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the prosecutor in writing of such intention and file a copy of such notice with the court.
**(b)  Disclosure of information and witnesses.** Upon receipt of notice that the defendant intends to rely upon an alibi defense, the prosecutor shall inform the defendant in writing of the specific time, date, and place at which the offense is alleged to have been committed. The defendant shall then inform the prosecutor in writing of the specific place at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi. The prosecutor shall then inform the defendant in writing of the names and addresses of the witnesses upon whom the government intends to rely to establish defendant's presence at the scene of the alleged offense.
**(c)  Time of giving information.** The court may fix the time within which the exchange of information referred to in section (b) shall be accomplished.
**(d)**  . . .
**(e)  Failure to comply.** Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from, or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in the defendant's own behalf.
**(f)  Exceptions.** For good cause shown, the court may
(continued . . .)

8

circuit court should sanction Hilario by excluding Hansen-Loo's testimony.[7]

On August 21, 2012, the State requested a chambers conference.  At the conference, the trial court indicated that it was inclined to require a notice of alibi before permitting Hansen-Loo to testify.[8]  Hilario then filed a "Notice of Alibi" ("Notice") on August 22, 2012, stating that he "hereby gives notice pursuant to Rule 12.1 of the Hawaii Rules of Penal Procedure of his intention to rely upon the defense of alibi."

Two days later on August 24, 2012, a hearing was held on several motions as well as Hilario's August 22, 2012 Notice of Alibi.  The court opened the hearing by stating that it "would like to address first . . . the notice of alibi."

Hilario's counsel explained that he filed the Notice because of the trial court's statements at the chambers conference following the filing of the State's Motion to Prevent:

> Your Honor, I received the State's motion for court
> order preventing Jens Kyler Hansen-Loo from testifying at

---

(. . . continued)

grant an exception to any of the requirements of this rule.

HRPP Rule 12.1 (emphasis added).

[7]  The State also argued in the alternative that Hilario's counsel "be disqualified from representing Hilario because he is a witness relevant to Loo's credibility."  This issue is not before the court.

[8]  Content of the chambers conference is inferred from references by counsel at the August 24, 2012 hearing.

trial, or in the alternative, to disqualify me on Tuesday the 22nd, or the 21st. And upon my review, although I disagree with it, I don't believe that -- one of the basis that they're saying to prevent Hansen-Loo from testifying is that he is an alibi witness and that proper notice was not given as to I guess his status as an alibi witness. And I disagree with that.

But in the abundance of caution, I filed that notice of alibi. The purpose of the notice of alibi is to give notice of a witness, and they are fully aware of Hansen-Loo's status as a witness from March of this year. So, it's not as if we were hiding that witness or anything like that. They knew about that witness, and the purpose of the rule is that they have notice of the witness.

So, we gave them that a long time ago. Now, I still -- my position is still that he's not an alibi witness. However, I'm not about to tell the Court that I want him prevented from testifying, because obviously he is a critical witness. But our position as to the notice of alibi is that it's not necessary. Now, I know from our discussions in chambers, the Court disagrees. And the Court finds that Hansen-Loo is an alibi witness, that the Court is going to require that the steps set forth in Rule 12.1 be followed. And so our position is that although he's not -- we don't consider him an alibi witness, obviously we're not going to forego calling him as a witness.

(emphasis added). Hilario's counsel repeatedly emphasized that the defense did not view Hansen-Loo as an alibi witness:

And I just want to put on the record our position is that we don't believe he's an alibi witness.

Because this witness will not say or is unable to say where Vicente Hilario was on the day in question. What that witness does say, however, is that he was present at the time of the shooting, that he witnessed the shooting, and that it was not Vicente Hilario who did the shooting. . . .

Over defense counsel's objections, the court explained that

10

Hansen-Loo's testimony could support an alibi defense,[9] and therefore disclosures pursuant to Rule 12.1, starting with the Notice, were required.

Despite the Notice's untimeliness, the court then declined to strike it, as the court wished to allow Hilario the opportunity to present every available defense.[10]  Having allowed the Notice of Alibi to stand, the court noted that once exchanges were made pursuant to Rule 12.1(b), "the Prosecutor has the discretion to conduct an investigation on any information that's being exchanged, so that's going to take time.  And the reality is that with the trial date set for September 17th, pursuing this defense is not going to allow the trial to start within that time frame."  In other words, the court reasoned that "by allowing the Defendant to pursue the alibi defense, there has to be a continuance of the trial date." The court was inclined to charge the delay to the defense

---

[9]  The circuit court stated:

> But wouldn't that be absence, which is absence of a person, which is an alibi?  Because when you look at 12.1(e) about the testimony, it talks about not only the absence, but also the presence at the scene.  So, absence from the scene, presence at the scene, those all pertain to the alibi defense.

[10]  The circuit court explained:

> [T]he first issue for the Court is whether to strike it and not allow any testimony regarding the alibi.  And that, from the Court's perspective . . . would be detrimental to Mr. Hilario in the presentation of his defense to not allow him to present a defense that is available to him.

because the delay was "generated by th[e] notice of alibi," but heard argument before making its decision.

The State asserted that it was "prepared and ready to proceed . . . on September 17th." After explaining that she understood the court's inclination to permit Hilario to pursue an alibi defense despite the tardily filed Notice, the prosecutor argued that "Rule 48[(c)(4)(ii)[11]] . . . indicates that if there is a continuance granted to allow the Prosecutor additional time to prepare the Prosecutor's case, and additional time is justified because of the exceptional circumstances . . . that time should be excluded." The State expressed that after necessary disclosures were made pursuant to Rule 12.1, it "would need additional time to follow up to do further investigation."

Hilario's counsel did not directly address the Rule 48(c)(4)(ii) issue that was raised by the State, but instead

---

[11] Excludable periods under Rule 48 include:

> periods that delay the commencement of trial and are caused by a continuance granted at the request of the prosecutor if:
> (i) the continuance is granted because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or
> (ii) the continuance is granted to allow the prosecutor additional time to prepare the prosecutor's case and additional time is justified because of the exceptional circumstances of the case[.]

HRPP Rule 48(c)(4).

12

reiterated his argument that Hansen-Loo was not an alibi witness:

> Your Honor, we just want to be clear that our position again is that it's not an alibi, that [Hansen-Loo] simply is an eyewitness.  He's also going to impeach David Manaku, who says he saw Mr. Hilario do the shooting; whereas, the witness is saying he saw David Manaku do the shooting.
>
> So, our position is it's not an alibi.  And we don't feel that a continuance is generated because of that, but I understand the Court's position.  We just want to make it clear that that's our position.

Having heard the parties' arguments, the court set disclosure deadlines that extended past September 17, 2012, re-set trial for January 7, 2013, and excluded the period of continuance for Rule 48 purposes.

In sum, the circuit court concluded at the hearing: (1) Hansen-Loo was an alibi witness because he would testify that Hilario was absent from the scene; (2) the Notice of Alibi was untimely filed on August 22, 2012; (3) precluding Hansen-Loo's testimony was not an appropriate sanction for the untimely filing of the Notice, as Hilario should be permitted to present an available defense; (4) the Notice triggered mandatory HRPP Rule 12 disclosures and deadlines, thereby preventing trial from commencing on September 17, 2012; and (5) accordingly, "[f]or purposes of Rule 48 and for speedy and public trial, time is charged to Mr. Hilario."  Trial was re-set to begin with jury selection on January 7, 2013.

13

On September 18, 2012, Hilario filed a "Motion for Reconsideration of Determination of Alibi Defense" ("Motion to Reconsider"), asserting the following based on the records and files of the case:

> b. . . . Hansen Loo has stated that he was present at the scene of the shooting of decedent, that he did not see Defendant at the scene of the shooting and that David Manaku shot the decedent;
>
> c. Hansen Loo is unable to say where Defendant was at the time of the shooting [and therefore his testimony does not comprise an alibi defense];
>
> . . .
>
> i. Defendant requests the Court to reconsider its determination that Hansen Loo's proffered testimony to be alibi evidence;
>
> j. Defendant has no witness to say where Defendant was at the time of the alleged incident other than Defendant [and he has a right under the federal and State constitutions against self-incrimination, and should not be required to make pre-trial statements pursuant to HRPP Rule 12].

The State argued in response that Hansen-Loo would testify that "Hilario was not at the murder scene," which is an alibi. The State further argued that because "Hilario has filed a notice of intent to rely upon alibi[,] HRPP 12.1 applies and must be enforced." At an October 2, 2012 hearing, the trial court denied the Motion to Reconsider, stating that Hansen-Loo would be permitted to testify so long as Hilario complied with HRPP Rule 12.1. The denial order was entered on October 12, 2012.

On December 20, 2012, Hilario filed a "Motion to Dismiss for Violation of: (1) Rule 48 of the Hawaii Rules of Speedy Trial and (2) Right to Speedy Trial" ("Motion to Dismiss"),

14

arguing, among other things, that the delay in trial caused by the court's decision that Hansen-Loo was an alibi witness should have been charged to the State, not Hilario. According to Hilario, this non-excludable time period, coupled with the non-excludable period from the date of Hilario's arrest to the date of the first trial setting, exceeded the 180-day speedy trial period required under HRPP Rule 48. Moreover, "the delay in bringing Defendant to trial . . . has crippled defense preparation through loss of recall and possible loss of witness(es). Because of the substantial and irreversible prejudice caused by the delay . . . [,] [d]ismissal with prejudice is mandated." The State filed a response on December 24, 2012.

The circuit court held a hearing on the motion on December 27, 2012. Hilario argued several periods should not have been excluded for Rule 48 purposes. He did not provide a specific argument with respect to whether any portion of the relevant time period was excludable, other than to recount the circumstances leading to the trial's continuation.[12] After hearing argument, the court explained:

---

[12] Defense counsel stated:

> [T]he Court had set for [sic] the trial date for August 27th. And then again, there were motions filed. And I believe it was the State's motion to strike or to prohibit the calling of Jens Kyler Hansen-Loo based on the fact that the State -- the State's position was that he was an alibi
>
> (continued . . .)

15

> [W]hat happens is when we get to the August 24 date, this is where we get into the discussion regarding the alibi defense and the requirements of the alibi defense and Rule 12.1. The option for the Court at that time was to not allow it, because, first of all, the Court made a ruling over the objection of the Defendant that the testimony presented was, in essence, an alibi type defense.
>
> And so, that -- the objection was already noted. Once the Court made that ruling, the options for the Court was to not allow it or to do Weinberg versus Dixon-Weinberg type analysis where you look for other options. And the other option was to move the trial to give the Defendant an opportunity to comply with 12.1, which was a less drastic measure. And so, that is what the Court did to give Mr. Hilario the opportunity to present an alibi defense and to comply with the requirements of 12.1, which are rather specific. And whether Mr. Hilario chooses to use that or chooses not to use that, those are within his discretion at time of trial.
>
> And so, the Court finds from the August 24 date to the trial date that is set is also not a violation or it doesn't come towards Rule 48 for speedy and public trial.

The court ultimately denied the Motion to Dismiss.

Trial commenced on January 7, 2013. On March 8, 2013, a jury found Hilario guilty of Counts 1, 3, 4, and 5. Judgment was entered by the circuit court on July 25, 2013. Hilario was sentenced to life imprisonment.

## B.    Appeal to the ICA

Hilario timely filed a Notice of Appeal with the ICA. In his opening brief before the ICA, Hilario argued, among other

---

(. . . continued)
> witness for which no notice was given. And on August 24th, the Court ruled over our objection that Mr. Hansen-Loo was an alibi witness, and therefore, necessitated the filing of a notice of alibi as well as the required responses under the rule.
>
> And at that point, the Court continued the trial to January 7th.

things, that Hansen-Loo was not an alibi witness, and "[t]he trial court erroneously denied Hilario's Motion to Dismiss" because it failed to count the period "from September 19, 2012[13] to December 20, 2102 [sic][14]" against the State, as the delay was due to alibi disclosure procedures erroneously imposed on Hilario.

The State entertained the argument in its answering brief that under certain circumstances Hansen-Loo may not be an alibi witness:

> If [Hansen-Loo] was the only defense witness to establish that [Hilario] was not at the shooting — via [Hansen-Loo's] testimony that he was present and [Hilario] was not — <u>then the State does not believe this is technically alibi testimony</u> because under Rule 12.1, there would be nothing to disclose: <u>a witness who is present at the crime and saw that the defendant was not there, cannot establish the location of the defendant at the time the crime was committed.</u>

(emphasis added). Nevertheless, the State countered that the continuation of trial from September 17, 2012 to January 7, 2013 was made with Hilario's consent because, with respect to the issue of Hansen-Loo's testimony, Hilario failed to object "to the January 7, 2013 trial date <u>or the fact that the delay would be charged to the defense for Rule 48 purposes</u>." (emphasis added).

---

[13] It is unclear why Hilario argued the non-excludable period began on September 19, 2012, when trial had been previously set for September 17, 2012.

[14] December 20, 2012 was the date Hilario filed his Motion to Dismiss. According to Hilario's Motion, 115 non-excludable days elapsed from August 27, 2012 to December 20, 2012.

The ICA concluded that the trial court erred in determining that Hansen-Loo was an alibi witness:

> In Hawai'i, an alibi defense is "an attempt by the defendant to demonstrate he did not commit the crime because, at the time, he was in another place so far away, or in a situation preventing his doing the thing charged against him." State v. Cordeira, 68 Haw. 207, 210, 707 P.2d 373, 376 (1985) (citation and internal quotation marks omitted). . . . See also Black's Law Dictionary, [sic] 87 (10th ed. 2014) ("1.  A defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time. . . .  2.  The quality, state, or condition of having been elsewhere when an offense was committed.").

Hilario, mem. op. at 14.  "As Hansen-Loo was not an alibi witness, the procedure set out in HRPP Rule 12.1 did not apply and Hilario's trial should not have been delayed on this basis." Id. at 15 (footnote omitted).

The ICA also noted that "it was the State that first characterized Hansen-Loo as an alibi witness, a characterization that the defense never adopted and actively contested.  Absent this characterization, there would be no reason for the defense to file a notice of alibi." Id. at 15.  Accordingly, the ICA determined the State's argument that Hilario had consented to continuing the trial to January 7, 2013 was not founded in the record.  See id. at 16.

> Judge Ginoza dissented, reasoning that
>
> the Circuit Court correctly determined[] the delay in trial was a result of Hilario filing his Notice of Alibi, which was filed on August 22, 2012 (less than a month before the scheduled September 17, 2012 trial date). . . .  Although Hilario's counsel later argued that he did not believe

18

> Hansen-Loo was an alibi witness and that he filed the Notice of Alibi "in an abundance of caution," <u>Hilario nevertheless chose to file the Notice of Alibi and never withdrew it</u>."

<u>Id.</u> at 19 (Ginoza, J., dissenting) (first emphasis in original; second emphasis added).

### III.  Standard of Review

The appellate court reviews a trial court's denial of a HRPP Rule 48 motion to dismiss under both the "clearly erroneous" and "right/wrong" tests:

> A trial court's findings of fact (FOFs) in deciding an HRPP 48(b) motion to dismiss are subject to the clearly erroneous standard of review.  An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed.  However, whether those facts fall within HRPP 48(b)'s exclusionary provisions is a question of law, the determination of which is freely reviewable pursuant to the "right/wrong" test.

<u>State v. Samonte</u>, 83 Hawai'i 507, 514, 928 P.2d 1, 8 (1996) (quoting <u>State v. Hutch</u>, 75 Haw. 307, 328–29, 861 P.2d 11, 22 (1993)).

### IV.  Discussion

The circuit court and Judge Ginoza correctly observed that the issue of whether Hilario's case should be dismissed on Rule 48 grounds is distinct from the question of whether the trial court erred in determining that Hansen-Loo's testimony could present an alibi defense.  The circumstances on August 24, 2012 at the time the circuit court continued the trial from September 17, 2012 to January 7, 2013 included: the trial court's

19

evidentiary determination that Hansen-Loo's testimony supported an alibi defense; Hilario's filing of a Notice of Alibi just two days prior; the State's ongoing and known difficulties in interviewing Hansen-Loo; and the State's representation that it would need time to investigate any new information that might be contained in ensuing Rule 12.1 disclosures.  Under the circumstances of this case, the trial court was not wrong in determining that granting an additional investigatory period to the State was a justifiable excludable period under Rule 48. HRPP Rule 48(c)(8) allows for exclusion of "periods of delay for good cause."  This court has held that the "good cause" provision of Rule 48(c)(8) is "provided to take care of unanticipated circumstances," "and that "good cause means a substantial reason that affords legal excuse."  State v. Abregano, 136 Hawai'i 489, 497, 363 P.3d 838, 846 (2015) (citations omitted).  Whether a period of time is excludable as "good cause" under HRPP Rule 48(c)(8) is dependent on the facts of each case.  See State v. Herrera, 63 Haw. 405, 409, 629 P.2d 626, 629 (1981) ("'Exceptional circumstances,' like 'good cause,' is dependent on the facts of each case."); Abregano, 136 Hawai'i at 498, 363 P.3d at 847 (citing id.).  The facts and circumstances of this case, as outlined in Part II.A.2. above, were unanticipated, and constituted substantial reason that affords legal excuse.

Hilario repeatedly argues that the trial court erred when it determined that Hansen-Loo's testimony could support an alibi defense.  According to Hilario, without such a determination, Rule 12.1 disclosures need not have been made, and therefore trial could have occurred on September 17, 2012.  We need not and do not determine whether Hansen-Loo's testimony as reflected in the defense investigator's report actually presented an alibi defense.[15]  Whether or not it was, the circuit court was not

---

[15] Although we do not decide whether Hansen-Loo's testimony presented an alibi defense, we note that at the time of the August 24, 2012 hearing on the State's Motion to Prevent, Hansen-Loo had already declined multiple times to answer any of the State's deposition questions regarding the shooting.  Thus, the only evidentiary basis for Hansen-Loo's proffered testimony was contained in the February 2012 defense investigator's report.

> The report stated in relevant part:
>
> [O]n the morning of the shooting, [Hansen-Loo] was at his grandmother's home in Anahola.  When he awoke, . . . Hilario and David Manaku had returned from Kapaa and were making plans of going fishing.  They all left in [Hilario's] car and both [Hansen-Loo] and Manaku were dropped off on the back road between Anahola Beach and the Hawaiian Homes.  They walked down the road a short distance then went over the metal guard rail and were standing in the bushes.  A short while later [Hansen-Loo] heard [a] vehicle stop, a door slam[,] and a Caucasian male got out and the car drove off towards the beach.  The male stood under a tree next to the road.  [Hansen-Loo] added that Manaku took out a handgun from his waist band and walked towards the male from the back and the next thing he knew, Manaku shoots the guy a couple of times and the guy crouches down and Manaku shoots him again. . . .

(emphasis added).  Although the crux of the statement is that Hansen-Loo observed someone other than Hilario shoot Moore, the statement contains other information regarding Hilario's whereabouts at the time of the shooting.  Hansen-Loo stated that Hilario was "in a location other than the scene of the crime at the relevant time."  Black's Law Dictionary 87 (10th ed. 2014) (defining "alibi"); see also id. at 1838 (defining an "alibi witness" as "[a] witness who testifies that the defendant was in a location other than the scene of the crime at the relevant time; a witness who supports the defendant's alibi"); Hilario, mem. op. at 14 (citing State v. Cordeira, 68

(continued . . .)

21

wrong in excluding the relevant time period for good cause under HRPP Rule 48(c)(8) for Rule 48 purposes.  We also note that the time period of the continuance for these purposes was also reasonable.

## V.  Conclusion

For the foregoing reasons, we vacate the ICA's April 15, 2016 Judgment on Appeal entered pursuant to its March 18, 2016 Memorandum Opinion, and remand this matter to the ICA for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawai'i, August 12, 2016.

Justin Kollar and
Tracy Murakami
for petitioner

Keith S. Shigetomi
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

---

(. . . continued)
Haw. 207, 210, 707 P.2d 373, 376 (1985)).  Specifically, Hansen-Loo's statement that Hilario "dropped off" Hansen-Loo and Manaku on the "back road" a short distance from where the shooting took place minutes before the shooting could create a reasonable inference that Hilario had proceeded to a fishing spot in the area.  Such an inference could support an alibi defense, but we do not decide this issue as it is not necessary to do so.