**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000369
22-FEB-2024
07:45 AM
Dkt. 72 SO**

NO. CAAP-22-0000369

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF M.J.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 19-00279)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and McCullen, JJ.)

Guardian Ad Litem-Appellant Court Appointed Special Advocates Program (**CASA**) appeals from the Findings and Orders Concerning Child Protective Act, entered on May 5, 2022 (**May 5, 2022 Order**), which denies CASA's March 11, 2022 Reconsideration and/or Motion for Relief from the Findings and Orders Concerning Child Protective Act. CASA also challenges the Findings of Fact and Conclusions of Law entered on August 11, 2022 (**FOFs/COLs**) in the Family Court of the First Circuit for the State of Hawaiʻi (**Family Court**).[1]

M.J. (**Child**) was born in mid-2018. On November 19, 2019, Child entered foster care. On November 22, 2019, Appellee

_____

[1] The Honorable John C. Bryant, Jr., presided.

Department of Human Services (**DHS**) filed a Petition for Temporary Foster Custody of Child (**Petition**) due in part to Appellee-Father's (**Father's**) alleged noncompliance with required sex-offender treatment. On the same day, DHS filed a Family Service Plan recommending Father comply with court-ordered sex offender treatment and Hawaii's Opportunity Probation and Enforcement (**HOPE**) probation, among other things.

On December 4, 2019, the Family Court awarded DHS with foster custody over Child and Appellee-Mother and Father were permitted "reasonable supervised or unsupervised visitation" with Child at DHS and CASA's discretion. On October 20, 2021, and October 21, 2021, the Family Court held an evidentiary hearing (**October 2021 Hearings**) on (1) an Order to Show Cause why the DHS shall not submit a Motion to Terminate Parental Rights or Petition for Guardianship, and (2) Father's request for family supervision. At the October 2021 Hearings, Dr. Joseph Giovannoni (**Dr. Giovannoni**), a qualified expert in sexual abuse treatment, testified that he treated Father through the Adult Probation Special Services Branch (**APS**). Dr. Giovannoni testified, *inter alia*, that he did not clinically discharge Father, but Dr. Giovannoni closed the case with Father because Father made the choice to go to another program.

The Family Court continued the hearing to February 8, 2022 (**February 8, 2022 Hearing**) and, *inter alia,* continued foster custody of Child. In conjunction with the hearing, the Family Court considered additional argument and evidence, including further testimony from DHS Social Worker Renee San Nicolas (**San**

2

**Nicolas**), Acting Chief Program Officer at Child and Family Services Amanda Pump (**Pump**), and Brandi Lawrence (**Lawrence**), who had qualified as experts in the field of sex offender treatment. A November 23, 2021 Supplemental Safe Family Home Report to Court indicated that Father was to receive a "maximum benefits" discharge and not a "clinical discharge" because he has not admitted to/taken responsibility for the sexual offenses for which he had been convicted. The Family Court specifically stated it was proceeding on the basis that the sex abuse had occurred, but that based on assessments and testimony, Father was at low risk. The Family Court found it would be unfairly prejudicial to Father to change treatment programs, as then requested by DHS and CASA. At the end of the February 8, 2022 Hearing, based upon the credible testimony of the witnesses, exhibits entered into evidence and the parties' arguments, the Family Court found that there was "absolutely no evidence" that there were different recidivism rates for clinical discharge and maximum benefits discharge, so "there was no evidence whatsoever that maximum benefit versus clinical discharge is any better than the other." The court ordered that Father receive a two-hour unsupervised visit with Child once a week, and set up a periodic review hearing.

A March 11, 2022 Order stated, in relevant part, as follows:

> C RENEE SAN NICOLAS was qualified to testify as an expert in the field on child welfare/protective services under the HRS §587A-19, the Hawaii Rules of Evidence, Rule 702, and based on her education, training and experience;

D     AMANDA PUMP was qualified to testify as an expert in the field on sexual abuse treatment under the Hawaii Rules of Evidence, Rule 702, based on her education, training, and experience;

E     BRANDI LAWRENCE was qualified to testify as an expert in the field on sexual offender therapy under the Hawaii Rules of Evidence, Rule 702, based on her education, training, and experience;

F     The witnesses testified credibly and their testimony was helpful to the Court, however none of the witnesses knew the recidivism rate of sexual offenders who receive a non-clinical discharge, clinical discharge, or a maximum benefit discharge; i.e., it is unknown whether one type of discharge is more effective than the other and judicial notice is not appropriate to determine that issue;

G     [Father] is a convicted sex offender and as a result of his convictions for Sexual Assaults in the second, third and fourth degrees, is registered as a sex offender and the Court must proceed in this case as if the sexual abuse committed by [Father], but denied by him, actually occurred;

. . . .

I     BRANDI LAWRENCE testified that [Father] cannot receive a clinical discharge from her treatment without an admission to the sexual offenses for which he was convicted, but [Father] may receive a maximum benefit discharge from her treatment by completing the treatment to address his problems to the extent possible;

. . . .

K     The Court concludes that it would be unfairly prejudicial to [Father] to require him to start treatment with a new provider at this point in the case, when the child's date of entry into foster care was November 19, 2019, and treatment with a DHS sex abuse treatment provider would take at least two (2) years from date of entry[.]

. . . .

2     The request for [Father] to enter treatment with a DHS contracted provider for sex offender treatment is denied;

. . . .

8     The issue regarding the psychological evaluation for [Father] is reserved[.]

On March 21, 2022, CASA filed a Motion for Reconsideration and/or Motion for Relief from the [March 11, 2022 Order] (**Motion for Reconsideration**). CASA argued, *inter alia*,

that the Family Court improperly researched and considered recidivism rates in its decision. The Family Court explained that it was important to determine whether Father should be required to transfer programs and complete an additional two years of treatment before he could have limited unsupervised visitation with Child. The Family Court stated that it was unable to determine whether or not it could take judicial notice concerning whether clinical discharge was more beneficial and produced a lower rate of recidivism as compared to maximum benefits discharge. The Family Court then clarified that:

> Even if that research was improper, the court was left with the same conclusion at the end of its research that it had at trial, and that there was no evidence as to the difference between the two programs. In other words, the same conclusion was reached whether or not the court did its own research or not.

In a May 5, 2022 Order, the Family Court ruled that its "efforts to determine the efficacy of taking judicial notice of the differences, if any, between a clinical discharge and a maximum benefit discharge was appropriate - especially since both CASA and DHS failed to produce such critical evidence."

On May 31, 2022, CASA filed a notice of appeal.

On appeal, CASA challenges the Family Court's FOFs 24, 30 and 55, and COLs 4, 10, 11, 13, and 14 set forth in the FOFs/COLs;[2] and contends that the Family Court erred in refusing to order Father to submit to a psychological evaluation. The contested FOFs and COLs are as follows:

> 24. In mid-2021, the DHS and the CASA learned that a "maximum benefit" discharge from Father's sex offender treatment was acceptable to be in compliance with the terms

---

[2] CASA also challenges the corresponding findings and conclusions set form in the May 5, 2022 Order and the March 11, 2022 Order.

of Father's probation when clinical discharge from sex offender treatment had previously been requested.

. . . .

      30.    None of the sex offender treatment experts were able to testify that the recidivism rates between a "maximum benefit" treatment program and a "clinical discharge" program were any different. In other words, none of the sex offender treatment experts were able to testify that a "clinical discharge" program was better for Father rather than a "maximum discharge" program.

. . . .

      55.    Based upon the credible expert testimony of the DHS social worker RENEE SAN NICOLAS, the problems preventing FATHER from being able to provide a safe home for the Child is his sexual abuse history and lack of appropriate parenting ability.

. . . .

4.    AMANDA PUMP was qualified to testify as an expert in the field of sexual abuse treatment under the Hawaii Rules of Evidence Rule 702 based on her education, training, and experience.

. . . .

### Visitation

10.    Based on the credible testimony of the BRANDI LAWRENCE that the period between when the STABLE 2007 test was administered in November 2021 and the trial in February 2022, that father has made improvements in the areas of Poor Problem Solving and Negative Emotionality/Hostility, it is a reasonable conclusion that at the time of the February 8, 2022 trial, Father posed a low risk or criminogenic need and may be permitted limited unsupervised visitation with the Child to be arranged at the discretion of the DHS and in consultation with the CASA/GAL.

### Sex Offender Treatment for Father

11.    Father is on probation for his sexual assault convictions and is required to participate in sex offender treatment through probation resulting from that conviction. Since April 2021, Father has been engaged in sex offender treatment through probation and has been making progress. The evidence presented at trial was that if Father started a new sex offender program, that program would take an additional two years to complete. It would be prejudicial and unfair to Father to require him to start treatment with a new provider at this point in the case, when the child's date of entry into foster care was November 19, 2019.

. . . .

13.    It was appropriate for the Court, in light of the non-existence of the evidence supporting the issue of why the Court should order a "clinical discharge" sex

offender treatment program, as requested by CASA and DHS, to attempt to take judicial notice of the fact.

14.	The Court was unable to take judicial notice of the contested fact.  As such, the Court was left with the same evidentiary set of facts that was in existence when the Court undertook its independent investigation into the issue:  there was no evidence to support CASA's and DHS' position that a "clinical discharge" program was better than a "maximum discharge" program in regards to Father's treatment.  As such, even if not appropriate, the Court's independent investigation was harmless error.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve CASA's points of error as follows:

(1)  CASA argues that FOF 24 is clearly erroneous because San Nicolas testified that she learned Father's HOPE probation sex offender treatment program would be okay with maximum benefits discharge "right before trial in October" and not "mid-2021."

San Nicolas testified that she learned, right before the  October 2021 Hearings, that "probation [APS] would be okay with maximum benefit."  This could reasonably be construed as part of the (broad) middle of the year 2021.  It appears that the point was that she did not know this early in the case; it is clear that the Family Court understood that.  We cannot conclude that FOF 24 is clearly erroneous.

CASA argues that FOF 30 is clearly erroneous because the expert testimony effectively showed that clinical discharge is better than maximum benefits discharge.  However, Pump, who qualified as an expert on sex abuse treatment and child welfare, testified that clinical discharge differs from maximum benefits

7

discharge because clinical discharge requires completion of all elements of treatment, including an admission of the prior sex offense, whereas maximum benefits discharge does not. Pump testified, *inter alia*, that admitting to the sexual abuse offense helps reduce recidivism because it helps the offender "understand why he committed the abuse and how to prevent the abuses." In response to questions from the Family Court, Pump testified that she did not know the recidivism rates for, *inter alia*, clinical discharge or maximum benefits discharge. It is clear from the record that the Family Court considered the risk of recidivism, i.e., that Father would reoffend, as a highly important factor in deciding whether or not to allow Father unsupervised visitation with Child.

Lawrence, who was qualified as an expert in sex offender treatment, had treated Father and testified that she would not clinically discharge Father because he did not admit to the underlying offense. Lawrence testified that she did not know the recidivism rates for maximum benefits or clinical discharge, could not offer an opinion on Father's risk of reoffending and stated that "it is really difficult to answer that because not all programs give out clinical discharge." Lawrence observed that maximum benefits discharge did not involve having the clients admit to the offense while clinical discharge involves admission. Lawrence did not testify that one treatment program was better than the other.

The other experts, Dr. Giovannoni and San Nicolas, did not know the difference in outcomes between clinical and maximum

benefits discharge nor Father's risk of reoffending. According to the November 23, 2021 Supplemental Safe Family Home Report to Court prepared by San Nicolas, Father was set to receive maximum benefits discharge because he did not admit to the sexual abuse offense. Dr. Giovannoni testified that he usually issues maximum benefits discharge in court-ordered treatment. San Nicolas, on the other hand, testified that DHS recommended clinical discharge for Father so he could "acknowledge and accept responsibility" for the offense, contrary to the maximum benefits discharge provided by APS where Father does not need to admit to the offense. San Nicolas further testified that she *did not know* whether an offender could receive appropriate sex offender treatment without admitting to the underlying offense.

Based on the evidence in the record before the Family Court, we cannot conclude that the Family Court clearly erred in entering FOF 30.

CASA argues that FOF 55 is clearly erroneous because Father's alleged refusal to participate in a psychological evaluation is a reason that Father could not provide a safe home for Child, not just his "child sexual abuse history and lack of appropriate parenting ability."

San Nicolas testified that Father had not participated in a psychological evaluation as part of DHS' new service plan. San Nicolas did not testify that this prevented him from providing a safe home for Child. San Nicolas did not testify that the lack of this evaluation had a correlation to Father's

inability to provide a safe home. Thus, we conclude that CASA's challenge to FOF 55 is without merit.

CASA argues that the Circuit Court erred in entering COL 4 because Pump was qualified as an expert in sexual abuse treatment, child abuse and neglect, not just sexual abuse treatment. While the record reflects that the Family Court qualified Pump as an expert in child abuse, neglect and sexual abuse treatment, COL 4 is not wrong. At worst, it is incomplete. However, the disputed issue here is sexual abuse treatment and COL 4 correctly states that Pump was qualified as an expert in sexual abuse treatment.

CASA alleges that COL 10 is incorrect because Father still poses a danger to Child and therefore the threatened harm to Child is substantial and irreparable. It appears that COL 10 is based, *inter alia*, on FOF 32, which found that Father participated in STABLE 2007 Risk Assessment with Lawrence, and Father scored in the "lower end of the moderate range of criminogenic needs" and Lawrence testified Father improved in "Poor Problem Solving" and "Negative Emotionality/Hostility." (The higher end of the range is problematic.) The Family Court found Lawrence's expert testimony, which is the basis for unchallenged FOF 32, to be credible. CASA has failed to demonstrate that COL is wrong or that, as a result of that conclusion, the Family Court abused its discretion in allowing Father limited unsupervised visits with Child.

CASA alleges that COL 11 is wrong because it was Father's fault for prolonging his separation from Child and it

was wrong for the Family Court to conclude that Father's transition to DHS-provided treatment would take an additional two years. As to the additional period of time, COL 11 relies upon Pump's testimony, which the Family Court determined to be credible. Pump testified that on average, it takes DHS clients about two years to complete DHS's preferred sexual abuse treatment. CASA argues that in COL 11, the Family Court put Father's interests ahead of Child's best interests and did not consider Father's own actions in its decision. This argument is inconsistent with the FOFs and COLs as a whole. The Family Court found no credible evidence was presented that the newly recommended treatment requiring that Father admit prior sexual abuse would provide a better outcome, and pursuant to Hawaii Revised Statutes Chapter 587A, there is in effect an outer limit of time for potential reunification. We cannot conclude that the Family Court erred or abused its discretion in COL 11.

CASA argues that COL 13 was erroneous because it was improper for the Family Court to research recidivism rates *sua sponte* and because the Family Court did not notify the parties prior to conducting the research. A *sua sponte* decision to take judicial notice of an adjudicative fact constitutes an exercise of a court's discretion. State v. Kotis, 91 Hawaiʻi 319, 328-29, 984 P.2d 78, 87-88 (1999) (citing Rule 201(c) of the Hawaiʻi Rules of Evidence). "Judicial notice or knowledge may be defined as the cognizance of certain facts which judges and jurors may properly take and act upon without proof because they already know them." State v. Herrera, 63 Haw. 405, 408, 629 P.2d 626,

11

629 (1981) (citations omitted). However, the Family Court did not take judicial notice of the research it conducted on recidivism rates because it could not determine whether recidivism rates were appropriate for judicial notice, and stated that the court's research did not affect its decisions.

The Family Court found and concluded that there was no evidence of recidivism rates presented by the parties, and the court did not take judicial notice of any such fact. Thus, even if it was improper for the Family Court to conduct such research, we conclude that it was harmless error under the circumstances here.

CASA alleges that COL 14 is wrong because Pump's and Lawrence's testimony demonstrated that clinical discharge is better than maximum benefits discharge. However, as discussed above, the court weighed the evidence in the record and found that it did not support a conclusion that clinical discharge is necessarily better than maximum benefits discharge. In light of the lack of evidence demonstrating that clinical discharge is better than maximum benefits discharge, we conclude that CASA's argument is without merit.

CASA alleges that the Family Court erred in refusing to order Father to submit to a psychological evaluation. We review the Family Court's decision for an abuse of discretion. In re Doe, 95 Hawaiʻi 183, 189, 20 P.3d 616, 622 (2001). The Family Court determined that Father's service plan would continue to require Father to participate in and comply with APS' sex offender treatment but reserved the psychological evaluation

issue at the February 8, 2022 hearing.  We cannot conclude that the Family Court abused its discretion in deferring the issue of a psychological evaluation.

For these reasons, the Family Court's May 5, 2022 Order is affirmed.

DATED: Honolulu, Hawaiʻi, February 22, 2024.

On the briefs:

Brandon K. Eugenio,
(Arakaki & Eugenio, LLLC),
Guardian Ad Litem-Appellant,
Court-Appointed Special Advocates
 Program.

Herbert Y. Hamada,
for Father-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge